594 A.2d 717

**Bernard WILSON, Appellant,**

v.

**Lydia WILSON.**

Superior Court of Pennsylvania.

Submitted June 24, 1991.

Filed July 26, 1991.

474

Meg Groff, Bristol, for appellant.

Karen L. Saraco, Langhorne, for appellee.

Before OLSZEWSKI, TAMILIA and FORD ELLIOTT, JJ.

TAMILIA, Judge:

This appeal was taken by a foster father from the Order of the trial judge, dismissing his petition to obtain partial custody or visitation rights because he had no legal standing in relation to the child. The appellant contends that by his actions and intent, once the child was placed in the care of him and his wife, with his consent, the status of in loco parentis was established which entitles him to the rights and duties of a parent. For purposes of review, we detail the findings of the trial court as to the history of this case.

From the pleadings and from the testimony introduced at the hearing on January 24, 1991 the following history is disclosed: Bernard Wilson married Lydia Floyd on February 4, 1983. No children were born of the marriage. In June, 1988, a child was born to Marcia Rene Jaynes in New Mexico. Ms. Jaynes is distantly related to Mrs. Wilson. Ms. Jaynes determined that she was unable to raise her child, and so she placed the child in the physical custody of Mrs. Wilson to be raised. Ms. Jaynes

executed a Power of Attorney to Lydia Wilson, the legal effect of which is not being determined. Likewise we do not determine whether the child was placed with Mrs. Wilson for the purpose of ultimate adoption, or merely for interim care, until such time, if ever, as Ms. Jaynes sought to have her child returned to her. However, the child lived with Mr. and Mrs. Wilson from about June 27, 1988, the date appearing on the Power of Attorney, until June 1990, when Mr. and Mrs. Wilson separated, Mrs. Wilson retaining the child. No action was taken to determine the legal status of baby Wilson until October 15, 1990, when Mr. Wilson filed a petition seeking partial custody.

No natural relationship nor any legal relationship has ever been established between Mr. Wilson and baby boy Wilson whereby petitioner has shown a basis for petitioning to this Court for partial custody of the child he views as his son.

(Slip Op., Rufe, J, 3/26/91, pp. 1–2.)

Here, we are dealing with a foster child as to *both* parents. The distinction between step-parent and foster child when it relates to standing in loco parentis is not a significant one. In loco parentis has been defined as embodying "two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties." *Commonwealth ex rel. Morgan v. Smith*, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968). In *Spells v. Spells*, 250 Pa.Super. 168, 378 A.2d 879 (1977), we said:

Pennsylvania courts recognize that a person may "put himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption...."

"The rights and liabilities arising out of that relation are, as the words imply, exactly the same as between parent and child."

*Id.*, 250 Pa.Superior Ct. at 172, 378 A.2d at 881–82 (citation omitted).

In *Spells*, the Court commented in a fashion that is especially appropriate here:

> Whether appellant [foster father here] stood in loco parentis to his step[child] is a relevant factor which the lower court should consider. However, it is not apparent in the instant case whether the court did so, because the record before us is inadequate to determine that issue.

*Id.*, 250 Pa.Superior Ct. at 172–73, 378 A.2d at 882.

We must ask ourselves, assuming appellant/foster father is found to be fit, whether the short period of time (less than two years) during which the child was placed with the Wilsons, is sufficient to establish the in loco parentis status. This question may be answered by another question: Is a natural parent any less imbued with the rights and duties of parenthood because the child has been *in esse* for less than two years? The obvious response is no.

 While the appellee is allegedly distantly related to the child by blood, this alone gives her no presumptive right to deny the appellant access to the child. Here, the trial court found neither party had a clear legal right to the custody of the child as the power of attorney (unauthenticated), at best, only permitted Mrs. Wilson to exercise certain legal actions for and on behalf of the child. It provided none of the legal incidents of an adoption and clearly is no substitute for a finding of custody. As such, appellant and appellee stand on shaky but equal footing, and the best interest and general welfare of the child become of primary importance. The only foundation upon which the child's welfare may be tested in regard to the issues presented by this case is to explore the relationship of in loco parentis, and thereby fix custody in one or the other, with visitation or partial custody in the party not receiving custody. This inquiry must certainly require some contact with the natural mother, either by her direct testimony or by means of depositions which possibly can be obtained through cooperative undertaking between the Domestic Relations Office in Bucks County and its counterpart at the place of mother's residence in Arizona. Cases such as this leave the child without legally supported roots and

the future can only be uncertain and fraught with emotional and legal time bombs.

The Juvenile Act has a provision wherein a child in this situation could possibly be determined to be dependent. 42 Pa.C.S. § 6302, **Definitions** (child improperly placed for care or adoption).[1] We have experienced the great difficulty which arises when the child and its natural mother are separated at birth by informal arrangement and several years later the mother attempts to regain custody. In *Burke v. Pope*, 366 Pa.Super. 488, 531 A.2d 782 (1988), we held the trial court improperly imposed the doctrine of psychological bonding and failed to take proper measures to gradually reunite three children with their 30–year old natural mother, but ordered custody to the 61–year old caretaker. However, foster parents may prevail over the natural parent when bonding, behavioral problems and child's desire weigh heavily in favor of placement with the foster parent. *Jones v. Stone*, 343 Pa.Super. 416, 495 A.2d 205 (1985). It is better to establish the respective legal rights of the parties as early as possible rather than to place the child in the limbo of unprotected foster care. To this end, the national policy for children in foster care is to focus on permanency planning, whereby every effort is made to rehabilitate the natural parent(s), and failing this in a period of time that does not unduly interfere with the child's development and sense of belonging, to provide it with a permanent placement. *See In Interest of Sweeney*, 393 Pa.Super. 437, 574 A.2d 690 (1990).

The trial court's decision to curtail the hearing without proceeding to hear the appellant's claim, by dismissing it as being without standing, was premature and leaves the child vulnerable. A proper inquiry should resolve the custody issue, which is certainly necessary for the child's best interest, and failing to provide a suitable resolution, should involve the Bucks County Children and Youth Services

1. **"Dependent Child"**—A child who:

 (2) has been placed for care or adoption in violation of law.

(CYS) to employ its extended resources to properly move toward a permanent determination of the child's status.[2] Denying the child access to appellant fosters no conceivable benefit to the child at this stage of the proceeding and may deny it one source of support and stability which is in his best interest.

We, therefore, reverse the Order of the trial court and remand for proceedings not inconsistent with this Opinion. The broad inquiry mandated by law in custody proceedings requires the trial court to ascertain the true nature of the natural mother's placement of the child with the parties here; the fitness of both parties, the basis for determining the in loco parentis status of appellant; who is the primary caretaker, whether it be appellee or her mother; and whether, ultimately, Bucks County CYS should be involved in planning for the child in light of the dubious legal status of placement with the Wilsons.

Order reversed and remanded to the trial court for proceedings consistent with this Opinion.

Jurisdiction relinquished.

---

**2.** The Uniform Child Custody Jurisdiction Act, 23 Pa.C.S. § 5344, Jurisdiction, provides the authority for CYS to investigate "the home of the person to whom custody is awarded [to determine if it is] satisfactory for the welfare of the child." *Id.* at (a)(5).