603 A.2d 654

**DeEtte ENGLE**

v.

**Terry D. ENGLE**

v.

**Russell ENGLE, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 12, 1991.

Filed Feb. 26, 1992.

426

David S. Pollock, Pittsburgh, for appellant.

Henry A. Hudson, Jr., Greensburg, for DeEtte Engle, appellee.

Before ROWLEY, President Judge, and KELLY and CERCONE, JJ.

CERCONE, Judge:

This is a certified appeal from an interlocutory order of the Court of Common Pleas of Westmoreland County, dismissing appellant Russell Engle's preliminary objections as to personal jurisdiction and ordering his joinder as an additional party defendant.[1] For the reasons set forth below, we vacate the order of the trial court and remand for proceedings consistent with this opinion.

The present case originated as a complaint for divorce filed by appellee, DeEtte Engle, against Terry Engle, the defendant in the case below (hereinafter "Engle"). Appellee and Engle were married in Chicago, Illinois, in 1979. In the spring of 1981, they moved to Georgia where Engle worked for the Phoenix Group Company, a Georgia general partnership (Phoenix Group). Engle's employment with Phoenix Group terminated about four months later. About the same time, Engle executed an "Agreement for Sale of Partnership Interest" (termination agreement) with Phoenix Group.[2] In the termination agreement, Engle agreed to terminate his partnership interest in Phoenix Group for an amount not to exceed one hundred sixty-nine thousand, six hundred and seven dollars ($169,607.00). The termination agreement stated that "[Engle] is entitled, upon the sale or refinancing of various apartment projects, to an interest in the net proceeds after sale or refinancing, hereinafter called 'residual proceeds'...."[3]

1. After denying the preliminary objections, the trial court certified, pursuant to Pa.R.A.P., Rule 311(b)(2), 42 Pa.C.S.A., that a substantial issue of jurisdiction was presented. Therefore, the matter is properly before us for resolution at this time.

2. It is not clear from the record how or when Engle acquired a partnership interest in Phoenix Group Company.

3. The Agreement for Sale of Partnership Interest lists nine properties located in the following states: Illinois, Florida, North Carolina, Kentucky, Ohio, Indiana and Georgia.

The Engles moved to Pennsylvania in 1985. In September, 1986, Terry Engle telephoned his brother, the appellant herein, at his residence in Michigan. In the course of their conversation, Engle stated that his business was experiencing financial difficulties. In order to raise money, Engle offered to assign his interest in the residual proceeds promised in the termination agreement. Appellant offered to pay Engle twelve thousand dollars ($12,000) in exchange for the assignment.

In the next month, appellant and Engle engaged in one or two telephone conversations concerning the transaction. Engle forwarded an assignment agreement to Phoenix Group in their Florida office seeking their consent.[4] The agreement contained the following clause which allowed for future cancellation of the assignment: "This Assignment of residual proceeds is to remain in effect until cancelled by RUSSELL E. ENGLE and TERRY ENGLE by mailing such cancellation notice by Certified Mail, Return Receipt Requested, to the PHOENIX GROUP COMPANY." On October 14, 1986, Lester N. Garripee, a senior partner with Phoenix Group, consented to Terry Engle's assignment. Phoenix Group forwarded the agreement to appellant, who signed the agreement, and mailed copies to "everybody else so everybody got a copy." N.T. 11/9/90 at 46. Finally, appellant sent Engle a check for twelve thousand dollars ($12,000) by either mail or Federal Express.

The Engle's separated in October, 1987, and in February, 1988, appellee filed for divorce in the Court of Common Pleas of Westmoreland County. In the meantime, appellant received forty-five thousand dollars ($45,000.00) in residual proceeds from the sale of a property listed on the termination agreement. Appellee subsequently filed a petition to set aside the 1986 assignment, and to join appellant as an additional defendant in the divorce proceeding. Appellant filed preliminary objections challenging the lower court's

4. Under the partnership agreement, Engle cannot assign his right without the prior written consent of the Phoenix Group Company.

jurisdiction which the trial court overruled. This timely appeal followed.

When sustaining a preliminary objection would result in dismissal of an action, the objection should be sustained only in cases which are free from doubt. *Barber v. Pittsburgh Corning Corp.*, 317 Pa.Super. 285, 302–03, 464 A.2d 323, 332 (1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 346 (1984). In deciding whether to sustain or deny preliminary objections as to jurisdiction, the court must consider the evidence in the light most favorable to the non-moving party. *Kenneth H. Oaks, Ltd. v. Josephson*, 390 Pa.Super. 103, 105, 568 A.2d 215, 216 (1989). After reviewing the evidence in the present case in such a light, we cannot conclude that the evidence supports the lower court's denial of appellant's preliminary objections.

A court may exercise *in personam* jurisdiction over a nonresident if (1) jurisdiction is conferred by the state long-arm statute; and (2) the exercise of jurisdiction under the statute meets the constitutional standards of due process. *Hewitt v. Eichelman's Subaru, Inc.*, 341 Pa.Super. 589, 592, 492 A.2d 23, 24 (1985). Under Pennsylvania's long-arm statute,[5] "[j]urisdiction of the Pennsylvania courts may be exercised with respect to all persons, including corporations, 'to the fullest extent allowed under the Constitution of the United States.' 42 Pa.C.S.A. § 5322(b)" *Eastern Continuous Forms v. Island Business Forms*, 355 Pa.Super. 352, 354, 513 A.2d 466, 467 (1986) (quoting *Slota v. Moorings, Ltd.*, 343 Pa.Super. 96, 101, 494 A.2d 1, 3 (1985)). Therefore, our controlling consideration is whether subjecting the nonresident appellant to suit in Pennsylvania would deprive appellant of his constitutional right to due process. *Hewitt v. Eichelman's Subaru, Inc., supra*, 341 Pa.Super. at 592, 492 A.2d at 24; *Temtex Products, Inc. v. Kramer*, 330 Pa.Super. 183, 194, 479 A.2d 500, 505–06 (1984); *Koenig v. International Brotherhood of Boilermakers*, 284 Pa.Super. 558, 567, 426 A.2d 635, 640 (1980).

5. 42 Pa.C.S.A. 5322.

■ The Due Process Clause of the Fourteenth Amendment to the United States Constitution allows personal jurisdiction over a nonresident defendant where the defendant has "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer*, 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)]." *Eastern Continuous Forms*, 355 Pa.Super. at 355, 513 A.2d at 467 (quoting *Calder v. Jones*, 465 U.S. 783, 787, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1945) in turn quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Specifically, this court must analyze whether appellant's *conduct* and *connection* with Pennsylvania are such that he should reasonably anticipate being "haled" into court here. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "[I]t is essential in each case that there be some act by which the defendant purposely avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Barber v. Pittsburgh Corning Corp., supra*, 317 Pa.Super. at 293, 464 A.2d at 327–28 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)).[6]

■ It is well-settled that even a single act may support jurisdiction, "so long as it creates a 'substantial connection' with the forum, provided the nature, quality and

6. Pennsylvania has adopted a more flexible, minimum contacts analysis of jurisdictional due process. Previously, the analysis had been performed by applying the three part test first announced in *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974). Under this analysis, the defendant must have purposefully availed himself of the privilege of acting within the forum state, thus invoking the state's benefits and protections. Next, the cause of action must have arisen from the defendant's activities within the state. Finally, the defendant must have had a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. *Id.* Now, however, Pennsylvania courts are following the dictates of the United States Supreme Court that *in personam* jurisdiction may not turn on the application of a mechanical test. *See Burger King v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985).

circumstances of the act's commission create more than a mere attenuated affiliation with the forum." *C.J. Betters v. Mid South Aviation,* 407 Pa.Super. 511, 518, 595 A.2d 1264, 1267 (1991). However, a party's contract with an out-of-state individual cannot alone establish sufficient contacts with the forum state. *Kenneth H. Oaks, Ltd. v. Josephson, supra,* 390 Pa.Super. at 106, 568 A.2d at 217. In addressing the jurisdictional dilemma created by interstate contractual obligations, the United States Supreme Court has held that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.,* 390 Pa.Superior Ct. at 106, 568 A.2d at 217 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)). The court must evaluate the party's "negotiations prior to the contract, its contemplated future consequences, the terms of the contract and the parties' actual course of dealing in determining whether the defendant 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State.'" *Burger King Corp., supra,* 471 U.S. at 474–75, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1240 Once minimum contacts with the forum state are established, those contacts may be considered in light of other factors to determine whether the exercise of personal jurisdiction will comport with fair play and substantial justice. *Kenneth H. Oaks, Ltd. v. Josephson, supra,* 390 Pa.Super. at 106, 568 A.2d at 217.

■ Under *Kenneth H. Oaks, Ltd. v. Josephson, supra,* we must view the facts of the present case in the light most favorable to appellee. Our scrupulous review of the record discloses that appellant, a Michigan resident, conducted contract negotiations which solely consisted of two or three telephone conversations with Engle in Pennsylvania. The "asset" of the transaction, a future right to "residual proceeds" from the sale of out-of-state real properties, was

sold two years prior to the commencement of the divorce action.

Keeping in mind our standard of review, *Barber v. Pittsburgh Corning Corp., supra,* we conclude that the question of Pennsylvania's *in personam* jurisdiction over appellant is free from doubt. Appellant's contacts with Pennsylvania, two or three isolated telephone conversations with defendant in Pennsylvania, his purchase of defendant's right to residual proceeds from the sale of out-of-state real property, and the transfer of payment, do not establish sufficient contact and connection with Pennsylvania that appellant could reasonably anticipate being brought into court here. *See World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567 ("defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there"). Appellant did not enter into protracted negotiations for defendant's asset, nor did he create a continuing relationship or obligation with defendant, or any other resident of Pennsylvania. *See Kenneth H. Oaks, Ltd. v. Josephson, supra,* 390 Pa.Super. at 106, 568 A.2d at 217 (court must look to negotiations prior to contract, the contract's contemplated future consequences, terms of contract, and course of dealing in determining whether defendant purposefully availed himself of the privilege of conducting activities within the forum). Notwithstanding the cancellation provision in the assignment agreement, appellant was under no further obligation to defendant after payment.

For the foregoing reasons, an attempt to subject appellant to *in personam* jurisdiction in the Pennsylvania courts would offend both the Pennsylvania long-arm statute and procedural due process. Because the trial court does not have *in personam* jurisdiction over appellant, he must be dismissed as a litigant.

The order of the trial court dated May 15, 1991 is vacated, and appellant is dismissed. The case is remanded to the trial court; jurisdiction is relinquished.