610 A.2d 995

**In re ADOPTION Of J.M.E. a/k/a A.K.E.**

**Appeal of M. and P.Y.**

Superior Court of Pennsylvania.

Submitted March 12, 1992.

Filed June 3, 1992.

Reargument Denied Aug. 4, 1992.

Thomas L. Kearney, York, for appellant.

Scott A. Beaverson, York, for appellee.

John G. Bergdoll, York, for R.C.E. and B.M.F., participating parties.

Before POPOVICH, HUDOCK and HESTER, JJ.

HESTER, Judge:

Maynard and Patricia Yost instituted this action by filing, on February 7, 1990, a report of intention to adopt J.M.E. a/k/a A.K.E. (hereinafter Albert), the natural son of Kathy K., and a petition to involuntarily terminate the parental rights of Kathy K. Albert, born June 25, 1988, has been raised by the Yosts since he was six weeks old. He now is nearly four years old. Appellee B.M.F. (hereinafter Bonnie), Albert's maternal aunt, and appellee R.C.E. (hereinafter Robert), the child's maternal grandfather, filed preliminary objections asserting that the Yosts lacked standing to file a petition for termination of parental rights. A hearing was held on April 10, 1991, following which the trial court granted the preliminary objections and dismissed the Yosts' petition to terminate parental rights and petition to adopt on August 21, 1991. This appeal followed.

The trial court, while not citing case law in support, determined that the Yosts lacked standing to maintain their petition to terminate parental rights. Specifically, the court concluded that the Yosts did not stand in loco parentis to the child. We are constrained to disagree and reverse.

Initially, we examine our scope of review. "When sustaining a preliminary objection would result in dismissal of an action, the objection should be sustained only in cases which are free from doubt." *Engle v. Engle*, 412 Pa.Super. 425, 430, 603 A.2d 654, 657 (1992). Further, we review the evidence in the light most favorable to the non-moving party. *Id.*

The following background information is essential to an understanding of the present controversy. Kathy K. is the mentally ill daughter of eighty-year-old appellee Robert and sister of appellee Bonnie. On June 25, 1988, Kathy K. gave birth to her third child, Albert, in Louisiana. The identity of Albert's father is not known. In May, 1988, Charity Hospital in New Orleans contacted Bonnie and informed her that Kathy K. was a patient there, that she was pregnant and due to give birth in mid-June, and that she "was in denial of her pregnancy." Notes of Testimony ("N.T."), 4/10/91, at 52. When Albert was born, Bonnie flew to New Orleans, took custody of Albert, and flew back to York, Pennsylvania.

For the first six weeks of his life, Albert was cared for by Bonnie and a friend. When the friend became unavailable, Bonnie, who is employed and the custodial parent of her own four children, consulted her father, Robert, concerning arrangements for Albert's care. Robert already was raising Kathy K.'s older son, while Kathy K.'s brother, Richard, was raising Kathy K.'s daughter. Robert suggested that they contact appellants about raising Albert, as the Yosts previously had offered to help him with the older children before Albert was born. *Id.* at 7, 57. All of the parties live within walking distance of each other. *Id.* at 50–51, 66. Appellants agreed to raise Albert, who began residing with them when he was six weeks old. As stated above, Albert

is now almost four years old. He has resided with appellants continuously and calls them "mom" and "dad." *Id.* at 75.

Our focus of inquiry in this case is on the language of § 2512(a) of the Adoption Act, 23 P.C.S. §§ 2101 *et seq.* That section sets forth who may file a petition for involuntary termination of parental rights.

### § 2512. Petition for involuntary termination

**(a) Who may file.—**A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

(1) Either parent when termination is sought with respect to the other parent.

(2) An agency.

(3) The individual having custody or standing in loco parentis to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

23 P.C.S. § 2512(a). It is clear that neither subsection (1) or (2) apply instantly. As to subsection (3), we previously have held that custody, as that term is used in § 2512(a), refers to legal custody, not merely physical custody. *In re Adoption of J.F.*, 392 Pa.Super. 39, 572 A.2d 223 (1990). Testimony at the April 10, 1991 hearing established that Kathy K., Albert's natural mother, had transferred legal custody to Bonnie in August, 1988. N.T., 4/10/91, at 62–63. Thus, the first part of § 2512(a)(3) is inapplicable to appellants. Therefore, the focus for the trial court, and our inquiry now, is whether appellants have standing in loco parentis.

The trial court determined that appellants, in effect, were foster parents who therefore lacked standing to maintain the petition to terminate parental rights. This determination by the trial court is an obvious, *sub silentio* reliance upon our decision in *In re Adoption of Crystal D.R.*, 331 Pa.Super. 501, 480 A.2d 1146 (1984). In that case, we held that foster parents, who have been awarded physical custody of a child by an agency which has obtained legal custody of the child, do not have standing to petition to terminate

the rights of the natural parents of the child. We believe *Crystal D.R.* is distinguishable from the present case. There, we examined the following relevant language in *Spells v. Spells*, 250 Pa.Super. 168, 378 A.2d 879 (1977):

> Pennsylvania courts recognize that a person may "put himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. This status, known as 'in loco parentis' embodies two ideas; first, the assumption of a parental status, and second, the discharge of parental duties." *Commonwealth ex rel. Morgan v. Smith*, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968). "The rights and liabilities arising out of that relation are, as the words imply, exactly the same as between parent and child."

*In re Crystal D.R., supra,* 331 Pa.Super. at 505, 480 A.2d at 1148 (citations omitted). We stated in *Crystal D.R.* that while foster parents are concerned with a child's day-to-day needs by virtue of having physical custody of the child, "it does not follow from this fact that they thereby assume a status of in loco parentis to the child, distinguished by 'rights and liabilities ... exactly the same as between parent and child.'" *Id.*

In analyzing whether foster parents stand in loco parentis to the foster child for purposes of 23 P.C.S. § 2512, this court noted the significant role assumed by the agency which places the child. We stated that it is impractical for an agency to care for a child, thus it transfers physical custody to foster parents, while remaining responsible for the care of the child. Moreover, we noted that the agency could regain physical custody and terminate the foster parent's relationship to the child whenever the child's interests require it to do so. Thus, we examined the division of responsibility for the child's welfare among three parties: the child's natural parents, the agency, and the foster parents. We found significant the fact that the agency supervises the performance of the foster parents: 1) by approving the foster home, 35 Pa.Code § 3130.39; 2) by

arranging payment for the foster parents for providing care for the child, 42 Pa.C.S. § 6306; 62 P.S. § 704.1; 3) by enforcing regulations governing the child's health, safety, and discipline, 35 Pa.Code §§ 3700.51, 3700.67, and 3700.63; and 4) in appropriate circumstances, by removing the child from the foster home, 35 Pa.Code § 3700.73. We concluded that the Legislature could not have intended to include foster parents when it provided in 23 P.C.S. § 2512(a) that an individual standing in loco parentis to the child could file a petition to terminate parental rights to the child. Rather, we concluded that the relationship of the foster parents to the child "is a subordinate relationship, supervised by the agency, and in turn by the court, responsible for placing the child." *In re Crystal D.R., supra*, 331 Pa.Super. at 511, 480 A.2d at 1151–52.

A review of the notes of testimony from the April 10, 1991 hearing compels the conclusion, contrary to appellees' urging, that appellants are not foster parents of Albert, as that term was used by this court in *In re Crystal D.R., supra*. Rather, appellants' designation as "foster parents" simply was a term of art used by appellees. N.T., 4/10/91, at 59. Regardless of how appellants are described by appellees, we must focus upon how appellants *function* in relation to Albert.

When appellees approached appellants in August, 1988, Albert was a six-week-old infant. They asked appellants to raise the child "until he's grown," stated that appellants were to be "his parents," and that Albert was to call appellants "mom" and "dad." N.T., 4/10/91, at 9, 74. While Albert does visit appellees, appellants retained the right to grant or decline visitation based upon their schedule. *Id.* at 13, 81. Appellees never paid appellants for raising Albert, although Bonnie testified that she bought baby food and juice a few times.[1] *Id.* at 13, 82.

Most significant, however, is appellees' intent that the placement of Albert with appellants was to be permanent.

---

1. Both parties testified that appellants have a medical assistance card for Albert. N.T., 4/10/91, at 16–17.

Mrs. Yost testified that Bonnie stated that Albert never would be removed from their custody and that they should raise Albert "until he's grown." *Id.* at 9, 11, 20. Bonnie herself testified that she told appellants that they were to raise Albert, and she acknowledged that appellants would thereby make decisions on his behalf. *Id.* at 74–75. Appellants have raised Albert in their religion, even though appellees and their families are Quakers and appellants are not. *Id.* at 13, 28, 58. Appellants vacationed in California with Albert in 1990 and did not seek anyone's permission to do so. *Id.* at 15.

It is clear that appellants are not foster parents as that term was used in *In re Crystal D.R., supra.* There is no agency responsible for Albert's care, no agency approved appellants' home, no agency enforces regulations pertinent to Albert's health, safety, and discipline, and no agency is ready to remove Albert from appellants' home. While testimony established that appellees and certain others have referred to appellants as Albert's foster parents, we agree with the trial court that this fact is of no moment "because of the not universally familiar technical meaning of that term." Trial court opinion, 11/15/91, at 2.

In *In re Adoption of S.C.P.*, 364 Pa.Super. 257, 527 A.2d 1052 (1987), we considered whether former foster parents had standing to seek adoption of their former foster child without the written consent of the child welfare agency which served as that child's legal custodian. Again, that case involved foster parents as that term was used in *Crystal D.R.* Moreover, this court found it significant that the foster parents in *Adoption of S.C.P.* "knew that they were embarking on a temporary relationship," and because of this, they "should not be permitted to circumvent the ephemeral expectations upon which the foster parent concept was designed." *In re Adoption of S.C.P., supra,* 364 Pa.Super. at 261, 527 A.2d at 1054; *see also Priester v. Fayette County Children and Youth Services,* 354 Pa.Super. 562, 565, 512 A.2d 683, 684 (1986) ("By its very nature, the foster parent/foster child relationship 'implies a warn-

ing against any deep emotional involvement with the child since under the given insecure circumstances this would be judged excessive.' "). The intent of the parties herein, again, is in marked contrast to the expectations present in a foster parent relationship as presented in *S.C.P.* In the instant case, all parties intended that Albert's placement with appellants would be permanent; indeed, the expectation clearly is that the Yosts are to be the only "parents" Albert would ever know.

We believe it is clear, then, that appellants are not foster parents as that term has been used in relevant case law and that under the particular facts of this case, appellants stand in loco parentis to Albert for purposes of 23 Pa.C.S. § 2512. We believe that the instant situation is precisely what the legislature contemplated when it included the phrase "in loco parentis" in the statute. We further note that it is presumed that every word of a statute is intended for some purpose and accordingly must be given effect. 1 Pa.C.S. § 1921; *Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662 (1983).

We believe this case has subtle similarities to *Wilson v. Wilson*, 406 Pa.Super. 473, 594 A.2d 717 (1991), although we acknowledge that there also are significant differences. In *Wilson*, an appeal was taken from an order dismissing Mr. Wilson's petition for partial custody of a child, of no blood relation, who had been placed in his care before he and his wife separated. In that case, the natural mother, who was a distant relative of Mrs. Willson, gave the Wilsons the child to raise. Dismissal was premised on the fact that Mr. Wilson had no legal standing in relation to the child. The following language, while not controlling due to the differing nature of the cases, is instructive:

> The trial court's decision to curtail the hearing without proceeding to hear [Mr. Wilson's] claim, by dismissing it as being without standing, was premature and leaves the child vulnerable....
>
> The broad inquiry mandated by law in custody proceedings requires the trial court to ascertain the true nature

of the natural mother's placement of the child with the parties here; the fitness of both parties, the basis for determining the in loco parentis status of [Mr. Wilson]; who is the primary caretaker, whether it be appellee or her mother; and whether, ultimately, Bucks County CYS should be involved in planning for the child in light of the dubious legal status of the placement with the Wilsons.

*Id.*, 406 Pa.Super. at 477–478, 594 A.2d at 719–720 (footnote omitted).

Thus, we conclude that appellants stand in loco parentis to Albert for the purpose of maintaining their petition to terminate the parental rights of his natural mother. We note that our decision in no way affects the merits of whether the petition should be granted. *Mitch v. Bucks County Children & Youth Services*, 383 Pa.Super. 42, 52 n. 7, 556 A.2d 419, 424 n. 7 (1989) (emphasis in original) (citation omitted) ("the relative *merits* of a petition in no way affect a party's *standing* to file it").

Order reversed and remanded for proceedings consistent with this opinion.