## In re Adoption of Lindsey E.

C.P. of Clinton County, no. 1-96.

*Michael F. Salisbury,* for petitioners.
*Philip M. Masorti,* for respondent.

SAXTON, *P.J.,* May 17, 1996—

## PROCEDURAL BACKGROUND

On March 5, 1996, petitioners filed for involuntary termination of the parental rights of respondent. A petition to adopt and a report of intention to adopt was also filed. A termination hearing was held April 15, 1996. After hearing, this court directed both parties to file briefs containing proposed findings of fact and conclusions of law. Petitioners filed their brief on April 24, 1996 and respondent filed his brief on May 3, 1996.

## FINDINGS OF FACT

(1) Petitioners are Brenda [    ], age 38, and Harold [    ], age 41, husband and wife, who reside at [    ], Clinton County, Pennsylvania.

(2) Respondent is Jeffrey [    ], age 30, who resides at [    ], Clinton County, Pennsylvania.

(3) The subject of this action is Lindsey [    ], a minor female child currently 5 years of age, having been born on June 18, 1990.

(4) The biological parents of Lindsey are [    ], sister of petitioner and [    ], respondent.

(5) The biological mother of Lindsey, [    ], died October 18, 1992, survived by her husband [    ] and her daughter Lindsey.

(6) Petitioner [    ] is Lindsey's natural maternal aunt.

(7) Petitioners have had physical custody of Lindsey since December 13, 1992, when respondent voluntarily approached them and asked them to care for Lindsey.

(8) The petitioners and respondent stipulated to the entry of a custody order entered by this court on January 28, 1993, awarding the parties shared legal custody

of Lindsey and granting primary physical custody of Lindsey to the petitioners.

(9) At the time the January 28, 1993 order was entered, all parties considered this to be a temporary order and expected a future reunion between respondent and Lindsey.

(10) Lindsey has continuously resided with petitioners and their two minor children since December 13, 1992, through the present.

(11) A visitation schedule was worked out between the parties. Respondent did not arrive for the August 1994 visit and has had no physical contact with Lindsey since that time.

(12) Petitioners have resided at the same address since Lindsey was placed with them by respondent on December 13, 1992, and this address was known to respondent.

(13) Petitioners have not hidden nor concealed Lindsey or Lindsey's whereabouts from respondent.

(14) For a period exceeding six months prior to the filing of the instant petition, the respondent failed or refused to send any cards or letters to Lindsey.

(15) Respondent knew petitioners' home address and telephone number.

(16) Petitioners did not refuse to accept any mailings from respondent.

(17) Respondent failed or refused to send or deliver any Christmas or birthday gifts to Lindsey for a period in excess of six months prior to the filing of the instant petition.

(18) In April 1994, respondent offered to pay petitioners child support for Lindsey's care, but child support payments were never requested by petitioners.

(19) Lindsey is currently enrolled in [   ] kindergarten class.

(20) Respondent has failed or refused to have any contact with Lindsey's school and has not visited or attended any of Lindsey's school functions.

(21) Respondent resides with his *paramour*, without benefit of marriage.

(22) Respondent's *paramour* has four children born to her who reside with respondent and *paramour*.

(23) The relationship between respondent and *paramour* has produced two additional children who reside with them.

(24) Respondent and/or respondent's *paramour* contacted petitioners requesting a picture of Lindsey sometime in October 1995 and January 1996.

(25) Respondent never resorted to legal means in an effort to gain visitation with Lindsey.

(26) Both parties agree that petitioners stand in loco parentis with respect to Lindsey.

(27) Lindsey has bonded with the petitioners and considers them to be her "mom" and "dad."

(28) Lindsey has also formed a strong bond with her first cousins, [   ] and [   ], and considers them to be her sisters.

(29) Petitioners wish to adopt Lindsey and the court takes judicial notice of the report of intention to adopt filed by petitioners with the Orphans' Court.

## DISCUSSION

A petition for involuntary termination of parental rights to a minor child may be filed by the individual who has custody of the child or who stands in loco parentis to the child and has filed a report of intention to adopt as required by 23 Pa.C.S. §2512(a)(3); *In re Adoption of J.M.E.*, 416 Pa. Super. 110, 610 A.2d 995 (1992). Since both parties agree that petitioners stand

in loco parentis and the petitioners have filed the required report of intention to adopt, they have standing to seek the involuntary termination of respondent's parental rights.

In terminating the rights of a parent, the court must determine whether "by conduct continuing for a period of at least six months [the parent] has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. §5211(a)(1). "Settled purpose" requires a deliberate decision by the parent to terminate the parent-child relationship and this decision must be persistent throughout the statutory six-month period. *In re Adoption of Baby Girl Fleming,* 471 Pa. 73, 369 A.2d 1200 (1977). Evidence of a settled purpose may be shown through the nonperformance of parental duties. *Lookabill v. Moreland,* 336 Pa. Super. 520, 485 A.2d 1204 (1984). However, the statute does not require a showing of both an intent to relinquish and a failure to perform parental duties. *In re E.S.M.,* 424 Pa. Super. 296, 622 A.2d 388 (1993).

The court must look to the individual circumstances of the parent in order to determine whether parental duties and obligations are being performed. *In re Adoption of Faith M.,* 509 Pa. 238, 501 A.2d 1105 (1985). Petitioners seeking involuntary termination must prove "by clear and convincing evidence" the grounds for termination. *In re Adoption of Atencio,* 539 Pa. 161, 166, 650 A.2d 1064, 1066 (1994). "[C]lear and convincing evidence means testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester,* 521 Pa. 300, 304, 555 A.2d 1202, 1203-1204 (1989). Above all, the court "shall give primary consideration to the needs and welfare of the child" in deciding

whether to involuntarily terminate parental rights. 23 Pa.C.S. §5211(a)(2).

And then, should the court determine, by clear and convincing evidence, that respondent failed to fulfill parental obligations throughout the statutory six-month period, the court must search further to ascertain what would be in the child's best interests. *In re Bowman,* 542 Pa. 268, 666 A.2d 274 (1995). Suffice it to say, in the instant case, respondent failed miserably in his parental duties, irrespective of his feeble excuses, and it is very clear Lindsey's interests will be best promoted by termination of respondent's rights and by adoption by petitioners.

This court honors each child's right to competent parenting and each child's right to be protected from incompetent parenting. The evidence shows petitioners to be competent. In short, petitioners have literally raised Lindsey since the death of her mother. Lindsey has melded to the family. She calls petitioners "mom" and "dad." Petitioners' other children are her "sisters." Petitioners have clothed, fed and provided for Lindsey without any help from respondent. A relationship has been established between them and Lindsey to the extent it would be tragic to erase it. More so, it would be tragic not to allow it to proceed to its only logical conclusion: adoption.

In effect, what has respondent provided Lindsey, other than a name? Since August 1994, he failed to maintain any contact with his daughter. After he agreed to a visitation schedule which would reintroduce him to his daughter's life and pave the way for reunification, he did not bother to arrive at petitioners' home. His excuse was that he was ill. Given that he was ill, he still failed to reschedule and, in fact, has not seen his biological child since that time.

Focusing on the statutory six months previous to the filing of the petition, respondent has had no contact

with Lindsey at all. He has not attempted to see his daughter or reach her by phone. He has sent neither a letter nor a card. He has not acknowledged her birthday nor did he send her a Christmas card or gift. He knew where Lindsey lived and he knew the telephone number; yet he made no effort to see or phone her. He never went to a public school function in order to support his daughter with a smile or hug, or to question her teachers. As the Pennsylvania Supreme Court stated in *Smith Adoption Case,* 412 Pa. 501, 505, 194 A.2d 919, 922 (1963), "[t]he parental obligation is a *positive* duty and requires *affirmative* performance which may not be delayed beyond the statutory period by the parent if the parental right is not to be forfeited." (emphasis added)

Mark Twain is quoted as having said:[1]

"We are always too busy for our children. We never give them the time nor the interest they deserve. We lavish gifts upon them; but the most precious gift—our personal association, which means so much to them—we give grudgingly and throw it away on those who care for it so little."

Respondent did not even lavish the gifts; but he certainly proved to be too busy.

The law requires that "a parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life." *Baby Boy A. v. Catholic Social Services,* 512 Pa. 517, 522, 517 A.2d 1244, 1246 (1986). A parent must affirmatively show love, protection and concern for his child. *Id.* Providing sperm or being present in the birthing room does not make one a parent.

"Causing the existence of a human being is one of the most responsible actions in the range of human

---

1. Albert B. Paine (1912). *Mark Twain: A Biography,* Volume 3, New York: Harper and Brothers, p. 1299.

life. To undertake this responsibility—to bestow a life which may be either a curse or a blessing—unless the being on whom it is to be bestowed will have at least the ordinary chances of a desirable existence, is a crime against that being."[2]

Lindsey, indeed, got that ordinary chance; however, not from respondent. He lost that chance and committed that crime when he decided she would be better off in the home of his late wife's sister and family. Children are not property, to be traded in the heat of the moment. They need attachment to their parents; affectionate holding, touching and talking. They need to be put to bed at night by the same loving hand which will awaken them the next morning. They need to bond. And that is exactly what did take place in Lindsey's life, only not with her biological father, but with her caretakers.

Perhaps it is that respondent was too busy being a father to the two children he sired with his *paramour.* Perhaps it is he was too busy with her additional four children who reside with them. This court finds it reprehensible that he is living with a woman, not his wife, and they bring two additional children into this world outside the sanctity of marriage. It is inconceivable that respondent would have any additional place within his life into which to fit Lindsey—physically or emotionally.

Petitioners were there when respondent failed—for whatever reasons, however noble. When his wife and Lindsey's mother died, it was he and Lindsey against the world, period. If he could not handle that—and he indicated he could not—then he gambled when he

2. John Stuart Mill (1859). On liberty, in Robert Maynard Hutchins (Ed.) (1952), *Great Books of the Western World,* volume 43. Chicago, IL: University of Chicago Press, p. 318.

allowed her to be removed from him and grafted onto the family of petitioners.

Respondent's excuses for his failure ring hollow. Even if, as he claims, petitioners created an "unfriendly environment which discouraged and dissuaded" him from maintaining contact with Lindsey, he had recourse and this court believes he was aware of that recourse. Some time ago, he contacted the agency that provides free legal services and when that agency would not accept him as a client, he gave up. He chose only to resort to a lawyer after this proceeding was instituted. If he had her best interests in mind and heart, the petition before this court would never have been filed. It would not have been necessary. Lindsey would have been living with him.

Such an eleventh hour showing is too little, too late. As the Supreme Court stated in *Baby Boy A., supra:*

"The wise requirement that a parent's right to a relationship with his child can only be terminated on clear and convincing evidence does not make parents owner of their children, free to cast them aside, as unwanted toys, . . . and then pick them up to play with again when the fancy strikes them. Instead it arises out of our deep conviction that the bond of family love will enable most parents to give better care to their children than the best that anyone else can provide. Our confidence in that conviction is lost, however, when a parent exhibits no signs of interest in his child over extended periods." *Id.* at 523, 517 A.2d at 1246-47.

### ORDER

It is hereby ordered that the prayer of petitioners be granted and that the parental rights of Jeffrey [　　], natural father of Lindsey Mae [　] are hereby terminated.