**In the Interest of B.L.J., JR.**

**Appeal of S.A.L. and C.E.L.**

Superior Court of Pennsylvania.

Argued Aug. 21, 2007.
Filed Dec. 11, 2007.

42   Pa.C.S.A. § 9714(g) (emphasis added).

Harry J. Cancelmi, Jr., Waynesburg, for appellant.

Linda S. Moore, Waynesburg, for appellee.

Allen J. Koslovsky, Waynesburg, Participating Party.

BEFORE: GANTMAN, TAMILIA, and POPOVICH, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellants, S.A.L. and C.E.L., appeal the order entered in the Greene County Court of Common Pleas, which sustained the preliminary objections of Appellee, T.G.H. ("Mother"), to Appellants' petition to terminate her parental rights as to B.L.J., Jr. ("Child") and dismissed the termination petition. We reverse and remand for further proceedings.

¶ 2 The Orphans' court set forth the relevant facts and procedural history of this appeal as follows:

[Child] was born December 22, 2001 to B.L.J., Sr. ["Father"] and [Mother]. The parents of [Child] were never married but were living together at the time of his birth. Soon after the birth of [Child], the parents went to live with [E.G. ("Grandmother")], mother of [Father] at her residence in Clarksville, Pennsylvania. Some time in 2003, [Mother] vacated the residence leaving the care of [Child] to [F]ather and [Grandmother]. In May of 2004, [Father] died leaving [Grandmother] as sole caretaker of [Child]. [Mother] made no attempt to gain custody of [Child].

On August 21, 2006, the petition to terminate the parental rights of [Mother] was filed ... by [Grandmother], and joined by [Appellants] as potential adoptive parents of [Child].[1] Temporary custody of [Child] was awarded to [Appellants] by this court pending the disposition of the termination proceedings. On August 23, 2006, two days after the filing of the Petition to Terminate Parental Rights, [Grandmother] died. On August 31, 2006, [Appellants] filed a Report of Intention to Adopt [Child].

(Orphans' Court Opinion, filed January 8, 2007, at 1–2). On September 1, 2006, Mother filed preliminary objections to the termination petition, seeking dismissal of the petition on several grounds including lack of standing.[2] Following a hearing on September 21, 2006 the court sustained Mother's preliminary objections and dismissed the termination petition on the ground that Appellants lacked standing to pursue the petition. This timely appeal followed. The court did not order Appellants to file a concise statement of matters on appeal pursuant to Pa.R.A.P.1925(b).

¶ 3 On appeal, Appellants raise the following issue for our review:

WHERE PATERNAL GRANDMOTHER, WITH WHOM A FOUR YEAR OLD LIVED NEARLY ALL OF HIS LIFE AND WHO HAD BEEN THE SOLE PARENTAL FIGURE FOR THE CHILD SINCE THE FATHER'S DEATH IN 2004, WHO HAD CUSTODY OF THE CHILD BY MOTHER'S PERMISSION, PETITIONS TO TERMINATE THE PARENTAL RIGHTS [OF MOTHER] ALLEGING THE MOTHER'S NEGLECT, BUT DIED AFTER COMMENCEMENT OF THE ACTION, DOES THE COURT HAVE CONTINUING JURISDICTION TO

---

**1.** Grandmother sent Child to live with Appellants in Arizona on August 2, 2006, due to Grandmother's declining health from cancer. Appellants are not related to Child; they are the daughter and son-in-law of E.V., Grandmother's male companion of several years with whom Grandmother and Child had been living since January 2006. E.V. was a participant in Child's care.

**2.** "On September 5, 2006, [Mother] filed a Complaint for Custody.... That matter was stayed by Court Order pending the resolution of the current case." (*Id.* at 3).

HEAR THE CASE WHEN THE CUSTODIANS TO WHOM THE PATERNAL GRANDMOTHER ENTRUSTED THE CHILD TOOK THE CHILD INTO THEIR HOME, JOINED IN THE PETITION, FILED A REPORT OF INTENTION TO ADOPT, AND IT IS IN THE BEST INTEREST AND WELFARE OF THE CHILD?

(Appellants' Brief at 7).

¶ 4 Our standard and scope of review of a court's order sustaining preliminary objections are as follows:

Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. The test on preliminary objections is whether it is clear and free from doubt from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. To determine whether preliminary objections have been properly sustained, this court must consider as true all of the well-pleaded material facts set forth in appellant's complaint and all reasonable inferences that may be drawn from those facts.

*Chester County Children and Youth Services v. Cunningham,* 431 Pa.Super. 421, 636 A.2d 1157, 1158 (1994), *aff'd.,* 540 Pa. 258, 656 A.2d 1346 (1995) (internal citations omitted). "This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion." *Clemleddy Const., Inc. v. Yorston,* 810 A.2d 693, 696 (Pa.Super.2002), *appeal denied,* 573 Pa. 682, 823 A.2d 143 (2003).

¶ 5 "[T]he question of standing is whether a litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Silfies v. Webster,* 713 A.2d 639 (Pa.Super.1998). "When a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action." *In re Adoption of W.C.K.,* 748 A.2d 223, 228 (Pa.Super.2000), *appeal denied,* 567 Pa. 745, 788 A.2d 378 (2000). "Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary." *Robert Half Intern., Inc. v. Marlton Technologies, Inc.,* 902 A.2d 519, 524 (Pa.Super.2006) (*en banc*). "Questions of law are subject to a *de novo* standard of review." *Id.*

¶ 6 Appellants argue the court had jurisdiction over the subject matter of the petition to terminate Mother's parental rights as to Child properly brought by Grandmother with standing as a third party *in loco parentis.* Appellants aver Grandmother's filing of the termination petition gave the court authority to act in the best interests of Child, which it did by granting temporary custody of Child to Appellants, appointing a *guardian ad litem* for Child, and scheduling a hearing on the merits of the termination petition. Appellants contend the court's jurisdiction did not diminish after Grandmother's death, regardless of whether Appellants would have had standing to commence the action initially without Grandmother.

¶ 7 Appellants also maintain they obtained standing as Child's custodial caregivers by bringing Child into their family as prospective adoptive parents at Grandmother's request in the absence of any capable party to care for Child. Appellants maintain the court confirmed Appellants' status as Grandmother's choice of caregivers for Child when it granted Appellants temporary custody of Child. Appellants avow they have done nothing to usurp the parental rights of Mother. Mother consented to Child's placement with Grandmother, made no attempt to

parent Child, and expressed no desire to be reunited with Child.

¶ 8 Appellants submit that even if they lack standing to proceed with the termination petition the court should not dismiss the petition, but refer the matter to the appropriate agency or the guardian *ad litem* with standing to proceed with the petition, where both Father and Grandmother who raised Child are deceased and Mother expressed no desire to care for Child herself, but wants Child to live with someone else other than Appellants. Appellants conclude the court's order sustaining Mother's preliminary objections should be reversed. Alternatively, Appellants ask this Court to remand the matter for further investigation as to the appropriateness of proceeding with the termination petition and Child's adoption. We agree the court's order dismissing the termination petition should be reversed.

■ ¶ 9 The Pennsylvania Adoption Act establishes a cause of action to involuntarily terminate parental rights. *In re Adoption of W.C.K., supra* at 229 (citing 23 Pa.C.S. § 2511). Section 2512 designates who may file a petition for the involuntary termination of parental rights.

### § 2512. Petition for involuntary termination

■ **(a) Who may file.**—A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

(1) Either parent when termination is sought with respect to the other parent.

(2) An agency.

(3) The individual having custody or standing *in loco parentis* to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

(4) An attorney representing a child or a guardian ad litem representing a child who has been adjudicated dependent under 42 Pa.C.S. § 6341(c) (relating to adjudication).

**(b) Contents.**—The petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights. The petition filed under this section shall also contain an averment that the petitioner will assume custody of the child until such time as the child is adopted. If the petitioner is an agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists.

**(c) Father not identified.**—If the petition does not identify the father of the child, it shall state whether a claim of paternity has been filed under section 8303 (relating to claim of paternity).

23 Pa.C.S.A. § 2512. "[A] party, other than an agency or attorney representing a minor child, may bring an action for involuntary termination of a parent's rights only if he or she is 1) the other parent or 2) an individual with custody or *in loco parentis* status who has filed a report of intention to adopt." *J.F. v. D.B.*, 897 A.2d 1261, 1280–81 (Pa.Super.2006), *appeal denied*, 589 Pa. 739, 909 A.2d 1290 (citing 23 Pa.C.S.A. § 2512(a)(1) and (a)(3)). Custody in this context refers to legal custody. *In re Adoption of J.M.E.*, 416 Pa.Super. 110, 610 A.2d 995 (1992), *appeal denied*, 533 Pa. 612, 618 A.2d 402 (1992). "Third parties who are not designated foster parents may seek adoption when they can establish that they stand *in loco parentis* to the child." *Chester County Children and Youth Services, supra* at 1159. A grandparent seeking to adopt her grandchild need not file a report of intention to adopt. *Id.* at 1160 (citing *In re Adoption*

*of Hess,* 530 Pa. 218, 608 A.2d 10 (1992)); 23 Pa.C.S.A. § 2531(c).

■■■ ¶ 10 Further, the legal status of *in loco parentis* refers to a person who puts himself or herself "in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption." *In re Adoption of J.M.E., supra* at 997.

> There are two aspects to the concept of *in loco parentis:* assumption of parental status and discharge of parental duties. In order for assumption of parental duties to be legitimate, it must have been accomplished through some legally cognizable means. Furthermore, the assumption of parental status must be predicated on the natural parent's agreement to a permanent placement of the child.

*In re C.M.S., supra,* 884 A.2d 1284, 1288 (Pa.Super.2005), *appeal denied,* 587 Pa. 705, 897 A.2d 1183 (citing *In re Adoption of W.C.K., supra* at 230). "The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child." *In re Adoption of J.M.E., supra* at 997.

■■■ ¶ 11 Instantly, Child lived with Grandmother from the age of four months, when Mother and Father went to live at Grandmother's house, until the summer of 2006. (*See N.T.,* 9/21/06, at 11; R.R. at 35a). Mother left Child in the care of Father and Grandmother when she moved away in 2003; she took no responsibility for Child's care. Upon Father's death in 2004, Grandmother became the sole caretaker of Child with Mother's permission and acquiescence. (*See id.* at 13; R.R. at 37a). Since 2004, Mother has seen Child only once by chance at a McDonald's restaurant in 2006.

■■■ ¶ 12 Grandmother attained *in loco parentis* status by putting herself in the position of Child's lawful parent and assuming the obligations incident to the parental relationship without formally adopting him. *See In re Adoption of J.M.E., supra.* Grandmother's status of *in loco parentis* established her right to act as a parent to Child. Consequently, Grandmother had standing to seek termination of Mother's parental rights. *See Chester County Children and Youth Services, supra;* 23 Pa.C.S.A. § 2512(a)(3). When Grandmother fell ill with cancer, she took steps to find suitable caretakers for Child. Because of Grandmother's *in loco parentis* relationship to Child, Grandmother had the same right as a parent to insure Child would be taken care of when Grandmother could no longer do so. *See In re Adoption of J.M.E., supra.* That appears to be what Grandmother was trying to do when she asked Appellants to take custody of Child, and subsequently filed the termination petition jointly with Appellants as prospective adoptive parents.[3] Notably, Mother does not seek to take on her role as a parent to Child. Instead, Mother expressed her desire for Child to live with R.J., Child's paternal uncle and his wife. (*See* N.T. at 14–15). Grandmother, however, chose Appellants as the best-suited adoptive parents over her own family members.

¶ 13 Further, the court granted temporary custody to Appellants as the prospec-

**3.** Mother claims Appellants lack standing, because the termination petition did not include their report of intention to adopt as required by 23 Pa.C.S.A. § 2512(a)(3). However, Grandmother was not required to file the report when she filed the termination peti-tion. *See Chester County Children and Youth Services, supra;* 23 Pa.C.S.A. § 2531(c). Appellants filed the requisite report approximately a week after Grandmother's death. This technical error does not implicate standing. *See In re C.M.S., supra* at 1290 n. 6.

tive adoptive parents immediately upon the filing of the termination petition, based upon Grandmother, *in loco parentis,* asserting her confidence in the care Appellants would provide for Child. (*See* Order of Temporary Custody, filed 8/21/06). Given Appellants legal status as custodial caregivers of Child and as prospective adoptive parents, Appellants now have a substantial interest in Child's future welfare, which permits them to invoke the court's assistance to protect their interest. *See Silfies, supra* at 645 (finding prospective adoptive parents had reasonable expectation they would be future permanent custodians of child, which gave them substantial interest in child's future welfare and rights to seek court's intervention to protect interest).[4]

¶ 14 Therefore, under these particular circumstances, we conclude the court should substitute Appellants for Grandmother as third parties with *in loco parentis* status for the purpose of proceeding with the termination petition. Importantly, our decision today says nothing about the merits of the termination petition or Appellants' suitability as adoptive parents. *See In re C.M.S., supra* (stating determination that petitioners have standing does not alter standard or placement of burden of proof in termination proceedings, but

simply allows petitioners to appear before court to make their case). Accordingly, we reverse the court's order sustaining Mother's preliminary objections and remand for further proceedings, including a home study of Appellants as prospective adoptive parents.

¶ 15 Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

¶ 16 *JUDGE TAMILIA FILES A CONCURRING STATEMENT.

## CONCURRING STATEMENT BY TAMILIA, J.:

¶ 1 I concur in the result of the well-considered Memorandum. I believe, however, that appellant's alternative suggestion of remand is warranted. I would remand and retain jurisdiction pending involvement of CYS and appointment of a guardian *ad litem* to determine the appellants' fitness and the appropriateness of the child's placement with them.

---

**4.** We note the court's reliance on *In re Adoption of W.C.K., supra* for the proposition that a petitioner must obtain *in loco parentis* status through legally cognizable means and the natural parent must agree to permanent placement of her child. In that case, the natural mother asked a third party to care for her one-month-old child "temporarily." The third party gave the child to prospective adoptive parents a few months later without the natural mother's consent and despite her attempts at reunification with her child. The prospective parents filed a petition for involuntary termination of the mother's parental rights to her child, which the Orphans' Court granted. This Court held the prospective adoptive parents' wrongful possession of the

child did not give them *in loco parentis* status so as to confer standing to file the termination petition. *See id.* Instantly, Mother left Child in Grandmother's care essentially for his whole life. Mother made no attempt to parent Child or even to visit him regularly. Mother is presently not seeking to re-establish her parental relationship to Child; she merely wants to substitute Grandmother's choice of caregivers for Child with someone of Mother's choosing. In contrast to *In re Adoption of W.C.K., supra,* the instant situation is not one in which Appellants gained physical possession of a minor child through illegitimate means and tried to use the courts to legitimize their wrongful possession of Child. *See id.*