**In re ADOPTION OF G.K.T.**

**Appeal of G.T., Father.**

**In re Adoption of G.K.T.**

**Appeal of G.T., Father.**

Superior Court of Pennsylvania.

Argued July 9, 2013.
Filed Sept. 6, 2013.

Eric L.B. Strahn, Reading, for appellant.

Claire A. Kimmel, Bellefonte, for K.W., appellee.

Denise M. Bierly, State College, for P.W., appellee.

BEFORE: MUNDY, J., OLSON, J., and STRASSBURGER, J.*

OPINION BY MUNDY, J.:

Appellant, G.T. (Father) appeals from the December 21, 2012 decree, granting the petition of K.L.W. and L.M.W. (Adoptive Couple) to involuntarily terminate Father's parental rights to his son, G.K.T. (Child), born in August 2011.[1] Father also appeals from the trial court's decree of adoption entered December 21, 2012.[2] After careful review, we are constrained to vacate both decrees and remand for further proceedings.

The orphans' court summarized the relevant factual background of this case as follows.

[Mother] testified that [Father] lived with her, the Child, and the Child's biological sister, [N., born in April of 2009] at the time of the Child's birth. [Mother] had moved in with [Father] when she was only sixteen years old. [Mother] and [Father] were engaged at times, but never married. Throughout their relationship [Father] was physically and emotionally abusive. They lived in a small apartment that was infested with cockroaches and had a number of other health and safety concerns. Though [Father] was physically present in the apartment, it was [Mother] who cared for the children. [Father] isolated himself, showed limited interest in the children, and focused primarily on his online relationships which he cultivated through Xbox Live, a multiplayer gaming system that allows users to engage in dialog and exchange pictures and video. He made no effort to better their living environment and was frequently angry and violent, causing [Mother] to live in constant fear. On one occasion, he threw a cup of water on [Mother] while she was holding the Child.

When the Child was less than a month old, Children and Youth Services ("CYS") of Berks County became involved with this case. The Child had missed a medical appointment and CYS workers were sent to [Father's] residence to investigate. [Father] was uncooperative, and as the encounter progressed, CYS workers thought it was necessary to remove the children from [Father] and [Mother]. [Father] put the children in the car, demanded [Mother] join him, and drove off without closing the doors. After this incident, the children were removed from the custody of both [Mother] and [Father] and put under the care of [Mother's] father. In late September 2011, [Mother] left [Father] and went to live with her father and the children. During the following months, [Father] visited the home of [Mother's] father on a somewhat regular basis. He provided formula and diapers on a couple of occasions and spent some time with his daughter. He still did not show an interest in the Child and did not attempt to establish a bond with him.

---

* Retired Senior Judge assigned to the Superior Court.

1. P.W. (Mother) relinquished her parental rights voluntarily and consented to the Child's adoption.

2. The appeals were consolidated *sua sponte* by this Court on February 11, 2013. *See* Pa.R.A.P. 513 (stating, "[w]here there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal[ ]").

Financially, [Father] provided limited if any support for the children even though it appeared he had the ability to do so. Prior to the Child's birth, [Mother] received a payout of unemployment benefits which was used to sustain the Child in his first weeks of life. After [Mother] moved in with her father, she continued to cover the children's expenses, sometimes by borrowing money from her father. At one point, [Father] asked [Mother] for $500.00, which she gave him. [Mother] testified that any money [Father] may have provided for the children did not come close to that amount.

Sometime during the fall months of 2011, [Mother] and [Father] began talking about placing the Child for adoption. [Mother] expressed concern that the Child might grow up to be like [Father], and wanted him to have a secure and loving family that could provide him with a better life. [Father] flipped back and forth between supporting the adoption outright and using [Mother's] desire to give the Child a better life as leverage to get out of paying child support for their daughter. He would try to strike deals whereby he would consent to the adoption if [Mother] would agree not to attempt to get child support from him for [N.] He also tried to convince [Mother] that he would consent to the Child's adoption if she would agree to resume their romantic relationship.

In November of 2011, [Mother] mentioned to [Father] that he might not be the Child's father. Samples were swabbed from [Father] and the Child in order to conduct a paternity test in early-to-mid December. When the test results came back proving that [Father] was indeed the Child's biological father, [Father] did not appear to care and

showed no more interest in the Child than he had previously. He moved to Michigan to start a new life with a woman he had met on Xbox, leaving no indication that he had any intention to return.

The Child was scheduled to be placed with his adoptive family on December 26, 2011. [Father] was supposed to return from Michigan that day to provide written consent to the adoption but did not. [Mother] called [Father] and he told her he would not be coming but made it clear that the adoption should go forward. Based on that conversation, the adoptive parents, who had not wished to take the Child if [Father] did not consent to the adoption, proceeded to accept the Child into their custody and care. The Child was nearly five months old at the time.

Consistent with [Father's] support of the adoption and his ambivalence about the children he left behind when he moved to Michigan to start a new life, [Father] made no attempt to learn the whereabouts of the Child or to have contact with him until April 2012 even though the Petition to Terminate his Parental Rights was filed in early February, 2012. April 2012 was also when [Mother] filed for support for the parties' daughter, [N.]. By that time, [Father] had failed to perform parental duties on behalf of the Child for a period of at least 8 months.

Orphans' Court Opinion, 2/6/13, at 5–7.

 Adoptive Couple filed their petitions to involuntarily terminate Father's parental rights and to adopt Child on February 3, 2012. On August 17, 2012, Father filed preliminary objections based on improper venue.[3] After hearing argument,

3. The orphans' court suggests that Father

waived the issue of improper venue because

the orphans' court overruled Father's preliminary objections the same day. The orphans' court conducted hearings on August 17, and December 18, 2012. The orphans' court entered its decree terminating Father's parental rights and the decree of Child's adoption on December 21, 2012. On January 15, 2013, Father filed two timely notices of appeal as well as two concise statements of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i).

On appeal, Father raises five issues for our review.[4]

1. [Whether] the [orphans'] court's failure to appoint counsel or a guardian *ad litem* to represent the Child in an involuntary termination of parental rights proceeding contested by the Child's natural Father, as mandated by 23 Pa.C.S. § 2313(a) constitute[d] an error of law requiring that the decree terminating Father's parental rights be vacated[?]

2. [Whether] the [orphans'] court erred when it entered a decree of adoption because its decree involuntarily terminating Father's parental rights to the Child is fatally defective and Fa-

ther did not consent to the termination of such rights[?]

3. [Whether] the [orphans'] court erred when it terminated Father's parental rights to the Child where [ ] Adoptive Couple failed to establish by clear and convincing evidence that the statutory elements of [section] 2511(a)(1) or [section] 2511(a) . . . (6), were met[?]

4. [Whether] the [orphans'] court erred in failing to sustain Father's preliminary objections to venue in Centre County inasmuch as venue was improper under section 2303 of the Adoption Act[?]

5. [Whether] the [orphans'] court erred when it considered the developmental, physical and emotional needs and welfare of the Child pursuant to [section] 2511(b) in the absence of sufficient proof that an involuntary termination of parental rights was warranted under [section] 2511[?]

Father's Brief at 9, 11, 12, 27, 31.

■ We begin by noting our well-settled standard of review.

Appellate courts must apply an abuse of discretion standard when considering

---

he "failed to object to venue the first time he appeared in [c]ourt." Orphans' Court Opinion, 2/6/13, at 2. To the extent the orphans' court argues that Father's preliminary objections were untimely, we note that in general "[i]mproper venue shall be raised by preliminary objection and *if not so raised shall be waived.*" Pa.R.C.P. 1006(e); *accord* Pa.R.C.P. 1028(a)(1); *see also* Pa.O.C.R. 3.1 (stating that "the pleading and practice [in orphans' court] shall conform to the pleading and practice in equity in the local Court of Common Pleas[ ]"). Once Father raised his challenge to improper venue through preliminary objections, the burden fell on Adoptive Couple to file preliminary objections to the timeliness of Father's preliminary objections. *See Richmond v. McHale*, 35 A.3d 779, 783 (Pa.Super.2012) (holding where a party fails to file timely preliminary objections to the

opposing party's assertion of substantive defenses in preliminary objections rather than in a responsive pleading or new matter, the issue is waived). As a result, we decline to find this issue waived on this ground.

4. Father does not include a separate statement of the questions involved in his brief as Pa.R.A.P. 2111 and 2116 require. The above-quoted statements are the headings from the argument sections in Father's Brief. We adopt them as his questions presented because they mirror his statement of errors complained of on appeal. While we cannot condone Father's failure to conform to the Rules of Appellate Procedure, his failure has not hampered our review, as we are able to discern the issues he raises on appeal.

a[n] [orphans'] court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.,* 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the [orphans'] court made an error of law or abused its discretion. *Id.;* [*In re:* ] *R.I.S.* [614 Pa. 275], 36 A.3d [567, 572 (2011) ]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.; see also Samuel–Bassett v. Kia Motors America, Inc.* [613 Pa. 371], 34 A.3d 1, 51 (2011); *Christianson v. Ely,* 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.,* there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike [orphans'] courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the [orphans' court] judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.,* 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the [orphans'] court and impose its own credibility determinations and judgment; instead we must defer to the [orphans' court] judges so long as the factual findings are sup-

ported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio,* 539 Pa. 161, 650 A.2d 1064, 1066 (1994).

*In re Adoption of S.P.,* 616 Pa. 309, 47 A.3d 817, 826–827 (2012).

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the [orphans'] court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The [orphans'] court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.,* 855 A.2d 68, 73–74 (Pa.Super.2004) (citations omitted). We also note that to the extent Father's issues on appeal raise pure questions of law, our standard of review is de novo and our scope of review is plenary. *In re B.L.J., Jr.,* 938 A.2d 1068, 1071 (Pa.Super.2007) (citation omitted).

■ In his first issue, Father avers that the orphans' court erred when it failed to appoint counsel to represent the Child. Father's Brief at 9. Father further argues that in failing to do so, the orphans' court violated section 2313 of the Adoption Act. *Id.* Section 2313 provides in relevant part, as follows.

§ 2313. Representation

(a) **Child.**—**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents.** The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

. . .

23 Pa.C.S.A. § 2313(a) (emphasis added). Adoptive Couple argues that Father has waived this issue because he did not raise it below in the orphans' court. Adoptive Couple's Brief at 16; *see generally* Pa. R.A.P. 302(a) (stating, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[ ]").

Father acknowledges that he did not raise this issue below in the orphans' court. Father's Brief at 9. However, Father argues that he was not required to do to so in light of this Court's decision in *In re E.F.H.*, 751 A.2d 1186 (Pa.Super.2000). In *E.F.H.*, the child's mother sought to involuntarily terminate the father's parental rights. *Id.* at 1187. The orphans' court ultimately denied the mother's petition concluding that the mother had not shown through clear and convincing evidence that termination of the father's parental rights would promote the child's needs and well-being. *Id.* On appeal, Mother argued that the orphans' court erred in not appointing counsel to represent the child's interest. *Id.* The father argued, as Adoptive Couple does in this case, that the mother waived this issue by not raising it below in the orphans' court. *Id.* at 1188. This Court concluded the orphans' court committed reversible error in not appointing counsel, and that the

mother was not required to raise this specific claim of error in the orphans' court.

The right to counsel belongs to the child, and there is no appointed counsel for the child who could have raised the child's rights in the proceedings before the [orphans'] court. The question goes to a fundamental statutory requisite to the [orphans'] court's decision in this matter.

Upon our careful review of the record in this case and the [orphans'] court's disposition, we must conclude that the [orphans'] court committed an error of law by failing to appoint counsel to represent the child pursuant to 23 Pa.C.S.A. § 2313(a), which directs that the court "shall" appoint such counsel. This Court has previously observed that the word "shall" is usually mandatory or imperative when used in a statute, although whether that word is directory or permissive is dependent upon the intent of the Legislature. *Tyler v. King*, 344 Pa.Super. 78, 496 A.2d 16, 19 (1985). Regarding the Legislature's use of the word "shall" in section 2313(a) of the Adoption Act, this Court has interpreted the word "shall" in section 2313(A) as being mandatory, not permissive, and as serving as a direction to the court to appoint counsel.

*Id.* at 1189–1190.

■ After careful review, we find *E.F.H.* to be controlling in this matter. The orphans' court did not appoint counsel for the Child, despite section 2313's mandatory language to the contrary. Adoptive Couple and the orphans' court acknowledge that no counsel was appointed. *See* Adoptive Couple's Brief at 18; Orphans' Court Opinion, 2/6/13, at 4. However, Adoptive Couple argues that the error was harmless because "at the time of placement and throughout the [orphans'] court proceedings, [the Child] would have been

incapable of communicating with [counsel]." Adoptive Couple's Brief at 18.

■ We find this argument unavailing. "[T]he purpose of [section] 2313(a) is to ensure that the needs and welfare of a child will be actively advanced by an advocate who owes loyalty *only* to the child." *In re Adoption of Hess*, 386 Pa.Super. 301, 562 A.2d 1375, 1381 (1989) (italics in original), *affirmed*, 530 Pa. 218, 608 A.2d 10 (1992). It may be true that when the child is a newborn, counsel's role is limited by the child's inability to communicate with him or her. However, we do not believe that it follows that counsel is unnecessary or gives us cause to ignore the plain text of section 2313(a). Counsel would still be required to independently advocate for the Child's best interests, regardless of whether the Child can communicate his preference or not. *See Hess, supra.* We decline Adoptive Couple's invitation to read an age component into section 2313(a)'s otherwise mandatory text. Based on these considerations, we conclude the orphans' court committed reversible error in failing to appoint a counsel for the Child as required by section 2313(a).[5] *See E.F.H., supra.*

■ In light of our disposition as to Father's first issue, we need not address his remaining issues on appeal. However, we elect to address Father's fourth issue, as its resolution will affect the proceedings on remand. In his fourth issue, Father argues that the orphans' court erred when it overruled his preliminary objections to venue. We begin by noting, the Adoption Act's venue statute.

## § 2302. Venue

Proceedings for voluntary relinquishment, involuntary termination and adoption may be brought in the court of the county:

(1) Where the parent or parents or the adoptee or the person or persons who have filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt) reside.

(2) In which is located an office of an agency having custody of the adoptee or in the county where the agency having placed the adoptee is located.

(3) With leave of court, in which the adoptee formerly resided.

23 Pa.C.S.A. § 2302.

In the case *sub judice*, it is undisputed that Child, Adoptive Couple, and Mother and Father all reside outside Centre County and that no agency is involved. Father lives in Michigan. Mother resides in Berks County, Pennsylvania, and Adoptive Couple resides in Ohio. Mother and the Adoptive Couple agreed to venue in Centre County and the attorneys who are facilitating Child's adoption have their places of business in Centre County.

Adoptive Couple argues that section 2302 provides that the action "may" be initiated where Mother resides but nothing in section 2302 prevents Mother from agreeing with Adoptive Couple to venue in a county other than where she resides. Adoptive Couple's Brief at 16. Although we agree with Adoptive Couple that the text of section 2302 literally says "may," we cannot agree that this point is disposi-

---

**5.** Adoptive Couple and the orphans' court rely on this Court's decision in *In re Adoption of N.A.G.*, 324 Pa.Super. 345, 471 A.2d 871 (1984). In *N.A.G.*, this Court concluded that any error in the orphans' court not appointing a counsel for the child was harmless. *Id.* at 875. We concluded the error in that case was harmless because "the [orphans'] court realized its error[,] made an appointment and directed appointed counsel to review the record, interview the children and conduct an investigation." *Id.* at 874. Like the *E.F.H.* Court, we reject Adoptive Couple's reliance on *N.A.G.* as no similar circumstances are present in this case. *See E.F.H., supra* at 1190.

tive. If we were to agree with Adoptive Couple's position, section 2302 would lose its force. Venue would therefore be appropriate in **any** county in this Commonwealth if the petitioning party and consenting parent agree to it. As a result, the contesting parent would be without recourse to challenge venue under section 2302.

It is true that nothing prevents Adoptive Couple and Mother from agreeing to venue in Centre County. However, Adoptive Couple and Mother cannot by agreement require Father to accept venue in Centre County where, as noted above, all parties agree that Centre County has no connection to this case or the parties in it. *See* 23 Pa.C.S.A. § 2302. Based on these considerations, we conclude that the orphans' court erred in overruling Father's preliminary objections challenging improper venue. *See* Pa.R.C.P. 1006(e) (stating, "[i]f a preliminary objection to venue is sustained and there is a county of proper venue within the State the action shall not be dismissed but shall be transferred to the appropriate court of that county[ ]").

Based on the foregoing, we are constrained to conclude that the orphans' court erred in failing to appoint counsel pursuant to section 2313(a) and in failing to sustain Father's preliminary objections to venue pursuant to section 2302. Accordingly, we are left with no other choice but to vacate both December 21, 2012 decrees, and remand this case for further proceedings, consistent with this opinion.

Decrees vacated. Case remanded. Jurisdiction relinquished.