J-A27007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: B.E.Z., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: A.M.L., | |
| Appellant | No. 56 WDA 2015 |

Appeal from the Order December 8, 2014
In the Court of Common Pleas of Blair County
Orphans' Court at No(s): 2014 AD 3A

| | |
|---|---|
| IN RE: A.M.Z., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: A.M.L., | |
| Appellant | No. 57 WDA 2015 |

Appeal from the Order December 8, 2014
In the Court of Common Pleas of Blair County
Orphans' Court at No(s): 2014 AD 3

BEFORE:  BOWES, OLSON, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 25, 2015**

A.M.L. ("Mother") appeals from the December 8, 2014 orders terminating her parental rights to her twin daughters, B.E.Z. and A.M.Z. We affirm.

A.M.Z. and B.E.Z. were born during January 2009, as a result of Mother's relationship with M.Z. ("Father"). Mother has struggled with substance abuse for most of her adult life. At the times relevant to this appeal she has alternated between county jail, state incarceration, and inpatient rehabilitative facilities. Immediately prior to the termination hearing, she resided at a half-way house located in Pittsburgh; however, the guardian *ad litem* indicates in her brief that Mother subsequently was re-incarcerated for violating the terms of her pre-release. Guardian *Ad Litem*'s brief at 6. The twins, who were born with traces of cocaine and marijuana in their systems, have always resided with Father in Blair County, Pennsylvania. Mother resided with Father and the children for the first two years of their lives. However, the romantic relationship between Mother and Father dissolved as a consequence of Mother's continued drug abuse. Since May 2011, Mother resided outside of the household when she was not incarcerated or engaged in inpatient rehabilitation. For the year and one-half prior to these proceedings, the household has included Father's current wife, J.Z., and her daughter M.L. The twins have formed close bonds with J.Z. and M.L. and they view them both as members of their immediate family.

Father is an attorney, and J.Z. is employed by the Commonwealth of Pennsylvania as an occupational therapist. As a result of her struggle with drug addiction, Mother has been incarcerated several times since the twins

were born.[1] In addition, her parental rights to an older child were terminated due to her inability to care for him.

On January 24, 2014, Father filed in the Blair County Orphans' Court petitions to involuntarily terminate Mother's parental rights to A.M.Z. and B.E.Z.[2] On the same date, Father and J.Z. filed petitions for adoption that outlined J.Z.'s intention to adopt the children following termination. Mother retained private counsel, and the orphans' court appointed a guardian *ad litem* to represent the children. The orphans' court initially scheduled the hearing for the termination of parental rights on February 28, 2014, and the adoption hearing on April 15, 2014. However, following Mother's request for a continuance, the orphans' court rescheduled the termination hearing to March 31, 2014, and stayed the adoption proceedings pending the result of that hearing. Thereafter, on March 20, 2014, the orphans' court granted Father's request for a continuance and rescheduled the termination proceedings to 9:00 a.m. on April 28, 2014, at the Blair County Courthouse. The back of the order granting Father's request included a stamped

---

[1] When the children were two years old, Mother was arrested and charged with shoplifting while her daughters were in her care. Police discovered drugs and paraphernalia in Mother's purse. She pled guilty to theft, drug-related offenses, and child endangerment.

[2] As Father practices law in Blair County, Centre County Senior Judge Charles C. Brown Jr., was appointed specially to hear the case.

certification that notice of the order was sent to the parties' representatives, including Mother's counsel, on March 25, 2014.[3]

Father, J.Z., and the guardian *ad litem* appeared for the termination hearing scheduled for Monday, April 28, 2014; however, neither Mother nor her counsel was present. Mother called the court administrator to notify it that she was en route from Pittsburgh to Blair County. She stated that she expected to arrive at the hearing at approximately 10:00 a.m. A paralegal from the law office that Mother retained contacted the orphans' court by telephone to inform it that the attorney was confused as to the date of the hearing and, therefore, was unavailable to participate at the scheduled time. The paralegal relayed to the orphan's court that the attorney "got it backwards," *i.e.*, "[she] believed that this hearing today on the termination was to be held after another proceeding, apparently the adoption proceeding, but in any event, . . . she got it backwards because that's not what's happening." N.T., 4/28/14, at 2.

After discussing the matter with Father's counsel and the guardian *ad litem*, the court considered their respective positions and placed on the record its reasons for proceeding without Mother or her attorney. The

_____

[3] The original order is included in the certified record transmitted in the case at action number 2014 AD 3A. The order transmitted with the companion case is a photocopy that does not include the portion of the document that contained the relevant certification.

orphans' court began the hearing at approximately 10:06 a.m. Father testified for approximately twenty minutes before Mother arrived at 10:27 a.m. Mother explained that she contacted her attorney on the previous Friday and was informed that the matter had been continued. She stated that she had been en route to Blair County that morning for unrelated matters and decided to contact the court administrator in order to confirm that the hearing date had been changed. The administrator advised her that it had not. At that point, she informed the court personnel that she was on her way to the courthouse.

After proffering the foregoing explanation and noting her attorney's absence, Mother requested a continuance. She entreated, "I feel that due to the nature of it being termination of my rights to my twins, I want to have some type of legal representation for myself." *Id*. at 35. The orphans' court denied the request, ruling that all of the parties had received notice of the hearing and that there was no breakdown in the court's machinery. Hence, the orphans' court proceeded with the hearing notwithstanding Mother's lack of representation.

In addition to his own testimony, Father presented J.W. as a witness and introduced eight exhibits into evidence. Mother cross-examined both of these witnesses, confronted the admissibility of the exhibits, examined three witnesses of her own, and testified in narrative form. Mother's attorney appeared at 3:25 p.m. while Mother was presenting her narrative. The

attorney did not provide any further explanation for her absence nor did counsel submit a request for a continuance. Following a brief recess to determine whether the attorney should conduct Mother's direct examination, Mother finished her narrative without counsel's aid. The entirety of counsel's participation was assisting Mother with offering an exhibit into evidence.

At the conclusion of the hearing, the orphans' court set a briefing schedule to commence following the receipt of the transcript. Father and Mother submitted their respective briefs on June 23 and June 26, 2014. With leave of court, the guardian *ad litem* filed her brief on July 24, 2014. All of the briefs addressed the merits of the substantive issue regarding whether Father satisfied his statutory burden of proof to terminate Mother's parental rights to B.E.Z. and A.M.Z. Significantly, Mother neglected to assert either that the trial denied her right to counsel at the termination proceedings or that it committed an abuse of discretion by denying her oral request for a continuance. Moreover, counsel still did not proffer any additional explanation for missing the hearing nor did she assert a lack of notice of the court's March 20, 2014 scheduling order. On December 8, 2014, the orphans' court entered final decrees granting Father's petition to terminate Mother's parental rights to A.M.Z. and B.E.Z., and it entered identical opinions in support of its determination. Since the matter was not raised in the briefs, the orphans' court did not address its decision to proceed with the hearing in counsel's absence.

Mother retained new counsel, who filed these timely appeals.[4] However, in contravention of Pa.R.A.P. 1925(a)(2)(i), Mother neglected to file her concise statement of errors complained of on appeal until January 30, 2015, three days after this Court entered an order directing her to file and serve the Rule 1925(b) statement by February 6, 2015. Mother's Rule 1925(b) statement leveled for the first time her complaint that the trial court erred in conducting the termination hearing without Mother's counsel and that it abused its discretion in denying Mother's motion for a continuance. Unfortunately, the trial court was not served with the Rule 1925(b) statement until one month after it was filed, and it did not issue its Rule 1925(a) opinion until May 6, 2015.[5] We received the certified record two days later. The matter was argued before this Court on September 17, 2015.

Mother raises three issues for review:

1. The court erred by conducting the hearing to involuntary terminate [Mother's] parental rights without . . . counsel being present to represent her thereby denying and violating [her] rights to due process of law.

---

[4] We consolidated the appeals *sua sponte*.

[5] The Rule 1925(b) statement included a certification that Mother served the document at the Blair County Court House, 423 Allegheny Street, Hollidaysburg, PA 16648. It is uncertain whether the assigned judge's status as a visiting judge from Center County exacerbated the delay associated with the service of the Rule 1925(b) statement.

2.   The court erred by conducting the hearing to terminate [Mother's] parental rights without making a determination that [Mother] waived her right to be represented by counsel thereby denying and violating her rights to due process of law.

3.   The court abused its discretion by denying [Mother's] oral motion for continuance when counsel of record failed to appear at the hearing to terminate appellant's parental rights requiring [Mother] to proceed without counsel of record being present.

Mother's brief at 3.

We address Mother's first two issues collectively.  In sum, Mother's assertions invoke legal authority that addresses an indigent parent's right to counsel in proceedings initiated by child care agencies.  *See*, *e.g.*, *In re Adoption of R.I.*, 312 A.2d 601 (Pa. 1973); 23 Pa.C.S.§ 2313.  The crux of her complaints are that, since she possessed a right to counsel during the involuntary termination proceedings, the orphans' court erred in forcing her to represent herself after her counsel failed to appear.  One inference of this argument is that her attorney's absence was *per se* ineffectiveness that warrants a new termination hearing.

Mother also suggests that the orphans' court should not have ignored her lack of representation where she did not knowingly, voluntarily, and intelligently waive the right to counsel.  She asserts that she not only declined to waive her right to counsel in the instant case, but she also specifically invoked that right and requested a continuance so that she could exercise it.  Accordingly, Mother posits that the orphans' court was required to confront the lack of counsel *sua sponte* in order to ensure that she was

not punished for her attorney's absence. For the following reasons, no relief is due.

Our standard of review regarding orders terminating parental rights is well ensconced. Above all, we review the orphans' court's determination for an abuse of discretion or an error of law. *In re A.R.*, 2015 WL 5712204, *2; 2015 PA Super 207 ("Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand."). While we pay great deference to the orphans' court's findings of fact and matters of weight and credibility, to the extent that the issue regarding Mother's right to counsel raises a question of law, we exercise plenary review. *See In re Adoption of G.K.T.*, 75 A.3d 521, 525 (Pa.Super. 2013) ("to the extent Father's issues on appeal [regarding the appointment of counsel for Child] raise pure questions of law, our standard of review is *de novo* and our scope of review is plenary.").

Pennsylvania jurisprudence establishes that an indigent parent who is a respondent in an involuntary termination proceeding is entitled to be advised of the right to counsel and to the appointment of counsel in order to exercise that right. *In re Adoption of R.I.*, 312 A.2d 601 (Pa. 1973). Moreover, the right to counsel cannot be waived unless the waiver is knowing, voluntary, and intelligent. *Id*. at 603. The Adoption Act accounts for an indigent parent's right to counsel during proceedings for the

involuntary termination of parental rights. Section 2313 provides in pertinent part as follows:

> (a.1) Parent.--The court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, upon petition of the parent, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship.

While § 2313 relates specifically to the appointment of counsel for indigent respondents, this Court has implicitly recognized that the right to counsel extends to all parents whose parental rights are subject to termination regardless of means. *See*, *e.g.*, *In the Interest of X.J.*, 105 A.3d 1 (Pa.Super. 2014) ("the orphans' court shall advise Mother of her counsel rights, appoint counsel for Mother, or affirmatively determine that Mother does not qualify for [appointed] counsel."). Likewise, § 2313 does not restrict the right to counsel to instances where the state agency is the petitioning party, and while conceptually defensible, our independent search did not disclose any case law that precludes the respondent to a private petition from exercising his or her right to counsel.

In *In the Interest of X.J.*, *supra*, we vacated the orphans' court decree terminating a mother's parental rights in *absentia* because, *inter alia*, the orphans' court failed to provide the mother proper notice of either the termination proceedings or her right to counsel pursuant to § 2313. The trial court in that case mistakenly believed that the mother was represented by the attorney who represented the mother during the related dependency

- 10 -

proceeding. However, that attorney had been permitted to withdraw and the orphans' court did not appoint new counsel in the termination proceedings. We observed, "Mother was neither advised of her right to counsel in the termination proceedings, nor afforded legal representation at any time in the termination proceedings in orphans' court." *Id*. at 5. Moreover, "The orphans' court conducted its termination hearing on March 17, 2014[, and] Mother was not present or represented by an attorney at this hearing." *Id*.

In reaching our decision in that case, we adopted the rationale espoused in ***Commonwealth v. Stossel***, 17 A.3d 1286, 1290 (Pa.Super. 2011), where we stated in relation to the denial of counsel in PCRA proceedings, if a party "was denied [her] right to counsel—or failed to properly waive that right—this Court is required to raise this error *sua sponte* and remand for the PCRA court to correct that mistake." We stated in ***In the Interest of X.J.***, "In light of the statutory and constitutional right at stake, we conclude the principle enunciated in ***Stossel*** is appropriate in termination of parental rights cases." ***In the Interest of X.J.***, *supra* at 4. In light of the foregoing principle, and mindful of the orphans' court's failure in that case to serve notice of the termination proceeding, advise the mother of her right to counsel, or investigate whether counsel should be appointed, we vacated the termination decree. We ordered a new termination hearing and directed the orphans' court to advise the mother of her right to counsel

and either appoint counsel to represent her or determine that she does not qualify for appointed counsel.

Conversely, in **In re A.R.**, **supra**, we recently confronted a similar issue and determined that reversal was not warranted under the facts therein. Significantly, the father whose parental rights were terminated in that case arrived at the involuntary termination hearing without representation and requested a continuance so that he could obtain counsel for the involuntary termination proceedings. The orphans' court denied the request, proceeded with the hearing, and ultimately terminated the father's parental rights. On appeal, the father argued that the orphans' court erred in failing to advise him of his right to counsel and by proceeding with the termination hearing despite his request for a continuance to allow him time to obtain counsel.

In rejecting the father's argument, we concluded that he had been served with notice of the hearing on the petition to involuntarily terminate his parental rights, which advised him of his right to be represented by an attorney and informed him how to obtain an attorney if he could not afford one. Moreover, the orphans' court observed that the father, in fact, had been previously assigned counsel, who withdrew from representation after the father made it clear that he did not intend to work with counsel or participate in the prior juvenile court proceedings. Thus, we reasoned that, since the father had proper notice of the hearing and had been informed of

both the right to counsel and how to obtain representation prior to the hearing, the orphans' court's decision to deny the motion for a continuance and its decision to require Father to participate in the hearing *pro se* was not tantamount to an abuse of discretion. Accordingly, we affirmed the decree terminating the father's parental rights.

While not identical to either case, the facts of the instant matter align closer to the facts of **In re A.R.**, **supra**, than the confusion confronting the court in **In the Interest of X.J.**, **supra**. Consistent with the father in **In re A.R.**, **supra**, and in contrast to the mother in **In the Interest of X.J.**, whose parental rights were terminated in *absentia* following the court's faulty service of the notice of the involuntary termination hearing and the trial court's confusion as to her representation, Mother in the case at bar received notice of the rescheduled hearing, had been informed of her right to counsel, and actually participated in the hearing. In addition, the orphans' court never demonstrated any confusion as to the status of Mother's legal representation in the involuntary termination proceedings. The orphans' court was aware that Mother had retained private counsel to represent her and that counsel filed multiple pleadings and documents on her behalf, including a prior written request for a continuance, which the trial court granted. Thus, congruent with our reasoning in **In re A.R.**, **supra**, we find that the certified record supports the orphans' court's decision to allow the

proceeding to progress in the absence of Mother's privately retained counsel even though she never waived her right to counsel.[6]

Mother's third contention is that the trial court abused its discretion in failing to grant Mother's request for a continuance. She argues that the orphans' court's reasons for denying the request, *i.e.*, that there was no breakdown in the machinery of the court and that Mother did not make a timely request for a continuance, were insufficient to support the court's determination. She further posits that, consistent with our reasoning in

---

[6] In her brief, Mother makes the passing complaint that "the failure of mother's counsel to appear at the hearing without proper notification is *per se* ineffective assistance of counsel. The law is clear that the right to assistance of counsel is the right to effective assistance of counsel." Mother's brief at 15. However, since Mother failed to either develop her argument that counsel's absence was tantamount to ineffectiveness *per se* or cite to relevant legal authority that would support her bare assertion of intrinsic ineffectiveness, we do not address it. **In re W.H.**, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Additionally, we observe that Mother's assertion is inaccurate. Generally, the appropriate standard for reviewing an ineffective assistance of counsel claim in the context of an involuntary termination case is "fundamental fairness," *i.e.*, whether the affected party received a fair hearing in light of the totality of the circumstances. **See In re Adoption of T.M.F.**, 573 A.2d 1035, 1044 (Pa.Super. 1990) (*en banc*) (plurality). Stated another way, "the appellant must show by clear and convincing evidence that it is more likely than not that the result would have been different, absent the ineffectiveness." **In the Interest of K.D**, 871 A.2d 823, 829 (Pa.Super. 2005). For the reasons we discuss in the body of this memorandum, Mother failed to satisfy the appropriate burden of proof.

***Stossel***, ***supra***, the orphans' court should have continued the proceedings *sua sponte* so that Mother could exercise her right to counsel. For the following reasons, we disagree.

This Court reviews a trial court's decision to grant or deny a continuance for an abuse of discretion. ***Baysmore v. Brownstein***, 771 A.2d 54, 57 (Pa.Super. 2001). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." ***Id***. Matters of a continuance are not specifically addressed in the Orphans' Court Rules. Thus, we review Mother's claim in light of the rule delineated in Pa.R.C.P. 216, which provides as follows:

**Rule 216. Grounds for Continuance**

(A) The following are grounds for a continuance:

(1) Agreement of all parties or their attorneys, if approved by the Court;

(2) Illness of counsel of record, a material witness, or a party. If requested a certificate of a physician shall be furnished, stating that such illness will probably be of sufficient duration to prevent the ill person from participating in the trial;

(3) Inability to subpoena or to take testimony by deposition, commission, or letters rogatory, of any material witness, shown by affidavit which shall state:

(a) The facts to which the witness would testify if present or if deposed;

- 15 -

(b) The grounds for believing that the absent witness would so testify;

(c) The efforts made to procure the attendance or deposition of such absent witness; and

(d) The reasons for believing that the witness will attend the trial at a subsequent date, or that the deposition of the witness can and will be obtained;

(4) Such special ground as may be allowed in the discretion of the court;

(5) The scheduling of counsel to appear at any proceeding under the Pennsylvania Rules of Disciplinary Enforcement, whether:

(a) as counsel for a respondent-attorney before a hearing committee, special master, the Disciplinary Board or the Supreme Court;

(b) as a special master or member of a hearing committee; or

(c) as a member of the Disciplinary Board;

(6) The scheduling of counsel to appear at any proceeding involving the discipline of a justice, judge or magisterial district judge under Section 18 of Article V of the Constitution of Pennsylvania, whether:

(a) as counsel for a justice, judge, or magisterial district judge before the special tribunal provided for in 42 Pa.C.S. § 727, the Court of Judicial Discipline, the Judicial Conduct Board or any hearing committee or other arm of the Judicial Conduct Board; or

(b) as a member of the Court of Judicial Discipline, the Judicial Conduct Board or any hearing committee or other arm of the Judicial Conduct Board.

Pa.R.C.P. 216.

Herein, there was no agreement between the parties, illness, discovery issue, or applicable scheduling conflict. Thus, the only potential ground for Mother's request for a continuance in this case was under Rule 216(A)(4), which provides "Such special ground as may be allowed in the discretion of the court[.]" Instantly, our review of the record does not reveal that the orphans' court abused its discretion in denying Mother's ill-timed, oral motion for a continuance.

Stated simply, Mother failed to demonstrate the required special ground for relief in light of the circumstances of this case. As we discussed *supra* in addressing Mother's ability to exercise her right to counsel, the facts of this case correlate with our recent discussion in ***In re A.R., supra***, rather than ***Stossel***, ***supra*** or ***In the Interest of X.J., supra***. Mother had notice of the rescheduled hearing, as demonstrated by her telephone contact with counsel and the orphans' court administrator, and counsel's confusion was not caused by a breakdown in the court's machinery. In addition to those considerations, the following circumstances also support the court's decision: (1) the orphans' court had granted two prior continuances, which resulted in a two-month delay in addressing the adoption petition, and there had been no additional requests for a continuance prior to the scheduled date; (2) the orphans' court inquired as to the reasons for counsel's absence and delayed the proceeding for more than one hour in anticipation of Mother's arrival; (3) although Mother's counsel had transmitted a message to the court that she,

rather than the court, was at fault, she neglected to explain her error, request a continuance, or advise the court if or when she expected to appear for the hearing; (4) Mother had three witnesses who were present and ready to testify on her behalf; and finally, (5) Father and the guardian *ad litem* both leveled objections to the continuance on the bases that Mother had notice of the hearing and did not proffer any reason to further delay the termination proceedings other than her counsel's unexplained absence. All of these factors militate against a finding that the orphans' court abused its discretion in declining to apply the special grounds provision or that its decision to deny Mother's request for a continuance was the result of partiality, prejudice, bias, or ill-will. Accordingly, we will not disturb that decision.

Finally, although Mother does not specifically challenge the merits of the orphans' court's decision to involuntarily terminate her parental rights pursuant to 23 Pa.C.S. § 2511(a) and (b), to the extent that Mother's transient reference to counsel's ineffectiveness implicates the fairness of the termination proceedings, we address the orphans' court's determination briefly and for the reasons that follow find that it does not violate the fairness paradigm that we articulated in **In re Adoption of T.M.F.**, 573 A.2d 1035, 1044 (Pa.Super. 1990) (*en banc*) (plurality); and **In the Interest of K.D**, 871 A.2d 823, 829 (Pa.Super. 2005) ("The appellant must

show by clear and convincing evidence that it is more likely than not that the result would have been different, absent the ineffectiveness.").

Requests to involuntarily terminate a biological parent's parental rights are governed by 23 Pa.C.S. § 2511, which provides in pertinent part as follows:

> (a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused to failed to perform parental duties.
>>
>> . . . .
>>
>> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>>
>> . . . .
>
> (b) Other considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

We need only agree with the orphans' court's decision as to one subsection of 23 Pa.C.S. § 2511(a) in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Herein, we agree with the orphans' court's decision to terminate Mother's parental rights pursuant to subsections 2511(a)(1) and (b).

As it relates to § 2511(a)(1), the pertinent inquiry for our review follows:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re D.J.S.*, 737 A.2d 283, 285 (Pa.Super. 1999) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)) (internal citations omitted). Although the six months immediately preceding the filing of the petition are the most critical to the analysis, the orphans' court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. *In re B.,N.M.*, 856 A.2d 847 (Pa.Super. 2004). Additionally, to the extent that the orphans' court based its decision

to terminate parental rights pursuant to subsection (a)(1), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." In **In re C.M.S.**, 832 A.2d 457, 462 (Pa.Super. 2003), we explained, "A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship."

Presently, the evidence in the certified record sustains the orphans' court's decision to terminate Mother's parental rights pursuant to § 2511(a)(1). Stated plainly, Mother's extensive history of drug abuse and incarceration for drug-related offenses and theft crimes has prevented her from performing parental duties for her daughters since January 2011. She had not had any physical contact with the children since October 2012, one and one-half years prior to the evidentiary hearing, and no telephone contact. Mother has missed all but the girls' first birthday, and she failed to send the children letters, card, or gifts.

Mother has been content to allow Father and J.W. to tend to her daughters' physical and emotional needs. Mother neglected to exert a sincere and genuine effort to maintain a parent-child relationship with the children while she was incarcerated or reasonable firmness to overcome the

obstacles that she alleges that Father placed in her path. For example, despite Mother's complaints that Father would not let her interact with the children, she failed to initiate any custody proceedings or seek any other means to overcome the alleged barriers.

The record also demonstrates that Mother chose drug use and petty crimes over her now six-year-old daughters' wellbeing. She has spent the majority of her daughters' lives in jail and rehabilitation. Indeed, during the three-year period between January 2011 and January 2014, Mother was either incarcerated or in rehabilitation for twenty-nine months, and as noted, when Mother was either paroled or on probation, she did not use sincere and genuine effort to contact the children. Although she could maintain sobriety during her periods of incarceration and intensive treatment, once she was released from confinement or supervision, she would relapse and return to her destructive drug use.

In sum, Mother neglected to demonstrate any interest in maintaining a relationship with her daughters. She failed to provide any explanation for her absence from their life during the periods that she was not incarcerated. Moreover, B.E.Z. and A.M.Z. have absolutely no relationship with Mother. Instead, the children enjoy all of the qualities of a healthy and beneficial relationships with Father, J.Z., and M.L. The children identify J.Z. as their mother and M.L. as their older sister. In contrast, since 2011, Mother has had minimal contact with the children and failed to maintain any bond with

them. They no longer recognize Mother as a nurturing parent. Hence, the certified record sustains the orphans' court's determination under § 2511(a) and its need-and-welfare analysis pursuant to 2511(b). In light of the insurmountable evidence of Mother's failure to perform her parental duties for more than six months preceding the termination petition, her failure to exert a sincere effort to maintain the parent-child relationships or use reasonable firmness to overcome the real and imagined obstacles, and the utter lack of any bond with her daughters, we find that Mother is unable to prove by clear and convincing evidence that is more likely than not that the results would have been different if counsel had been present for the entire hearing.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2015