J-A06002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: A.M.A.

APPEAL OF: C.A., FATHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1763 MDA 2015

Appeal from the Order Entered September 11, 2015
in the Court of Common Pleas of Adams County, Juvenile Division, at No(s):
RT-3-2015

BEFORE:  LAZARUS, STABILE and DUBOW, JJ.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 25, 2016**

Appellant, C.A. ("Father"), appeals from the decree involuntarily terminating his parental rights to his daughter, A.M.A. ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511 (a)(1), and (b). We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Father and M.C.D. ("Mother") were married in 2005, and lived together in South Carolina.  Child was born in February 2008.  The parties separated in or about April 2009, and Mother and Child moved to the home of Child's maternal grandparents in Virginia Beach, Virginia. In July 2009, Mother and Child moved to Dover, York County, and in October 2009, they moved with Mother's then boyfriend into an apartment in Hanover, York County. At some point, they moved to Adams County, but returned to live in York County in 2013.

In early spring 2011, Father contacted Mother to arrange a meeting with her and the Child. They met for two to three hours.  This was the first

time Father had seen the Child since the parties' 2009 separation, two years earlier. The next time Father saw Child was three years later, in February 2012, at Child's fourth birthday party.

In April 2012, Father filed a divorce and custody action in South Carolina. The court transferred the custody action to Adams County where Mother and Child were then living. In August 2012 after a custody conference, the trial court ordered that the parties have shared legal custody of Child with primary physical custody remaining with Mother. In addition, the court ordered that Father was to have no contact with Child except as directed by the court.

Four custody conferences followed in Adams County between March 7, 2013, and July 3, 2013, in which the court granted Father five limited blocks of mostly-supervised contact with Child in Pennsylvania and Richmond, Virginia.

Child was five years old in March 2013 and had seen Father only twice since the parties' separation in 2009, four years earlier. The court granted Father permission to have weekly telephone contact with Child beginning in late March 2013.

After a July 7, 2013 visit with Child, although he kept in telephone contact when possible, Father did not see Child, made no further efforts to

see Child and did not seek any further custody orders so he could see the Child.[1]

On February 18, 2015, Mother filed a Petition to Terminate Father's Parental Rights ("TPR Petition") in Adams County. Father filed preliminary objections, asserting that York County was the proper venue because, *inter alia*, he believed the Adams County Orphans' Court had been giving preferential treatment to Mother. The Orphans' Court tentatively granted Father's motion, but permitted Mother to file a motion for leave of court so that the action could remain in Adams County. Mother filed the motion and, after a hearing in which Mother testified as to the numerous contacts Child has with Adams County, the Orphan's Court granted her motion on July 7, 2015.

**Parental Rights Termination Hearing**

On August 27, 2015, the Orphans' Court held an evidentiary hearing on Mother's TPR Petition at which Mother, Mother's current husband, M.D., and Father, among others, testified. The Guardian *ad litem* provided argument on behalf of Child.

Father testified that obstacles, such as distance, hindered his efforts to maintain contact with Child, and suggested that Mother was uncooperative and had attempted to thwart his efforts. Father produced phone records

---

[1] Mother and M.D. married on December 20, 2013, and had a child, S.D., in February 2014. Father also remarried and has two children from his second marriage.

showing numerous attempts he had made in 2014 to contact Child by telephone, even when he was overseas on military assignment. He stated that he had sent Mother many text messages asking about Child but would get only "vague answers." Trial Court Order, dated 9/11/15, at 7. Father stated that he had kept Child on his health insurance policy but admitted that, despite having shared legal custody of Child, he had made no inquiries with Child's school regarding how she was progressing (purportedly on the advice of previous counsel). Father testified that his failure to send gifts and cards to Child was because he believed Mother would not share them with Child, but admitted that he never forwarded anything to test that theory. *See id.* at 13-14.

Most significantly, Father stated that after the July 7, 2013 meeting, he "basically decided to back away" because "he had spent a lot on legal fees, he had [had] to travel from South Carolina for visits, and he had a new family." *Id.* at 6. He also stated that he decided to wait until all of his children were older to pursue visits with Child. *Id.*

Mother testified as to the lack of contact between Father and Child since the July 7, 2013 visit. She stated that Father never called to ask about Child's health, schooling, and counseling. She also stated that she never petitioned for, and Father never offered, child support.

Mother's current husband, M.D., testified that Child has called him "Daddy" since she was two years old. He also stated that he has attended to

her every need, and that he wishes to adopt her. Trial Court Order at 14-15.

Child's Guardian *ad litem* informed the Orphans' Court that, according to Child, M.D. is her father and she refers to Father as "Mr. [C.]" N.T., 8/27/15, at 150. The Guardian *ad litem* stated: "[Child] did indicate to me that's how she wanted things to stay, and she wanted to have her family situation solidified in the language you would expect a seven-year old [*sic*] would use. A lot of it being she wanted to have the same last name as everybody else in the house and things like that." ***Id.***

The Orphans' Court concluded that Mother had met her burden, pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). On September 11, 2015, the court entered a decree terminating Father's parental rights.

Father filed this timely appeal.

### ISSUES ON APPEAL

Father raises the following issues for our review:

   a. Did the [orphans'] court abuse its discretion and err as a matter of law by granting [Mother] Leave of Court when venue properly resided in York County instead of Adams County?

   b. Did the [orphans'] court abuse its discretion and err as a matter of law in terminating Father's parental rights when [Mother] failed to meet her burden that termination of parental rights was warranted under 23 Pa.C.S. Section 2511(a)(1) and 2511(b)?

Father's Brief at unnumbered 7.

- 5 -

## ANALYSIS

### Venue

Father first avers that the Orphans' Court erred in granting Mother leave to file her TPR petition in Adams County. When reviewing a trial court's decision regarding venue, we will not reverse absent an abuse of discretion. *Galgon v. Martnick*, 653 A.2d 44, 46 (Pa. Super. 1995). "This determination, in turn, depends on the facts and circumstances surrounding each case and will not be disturbed if the trial court's decision is reasonable in light of those facts." *Id*. at 93 (citation omitted).

The Pennsylvania Adoption Act provides the following section regarding venue:

> **§ 2302. Venue.**
>
> Proceedings for voluntary relinquishment, involuntary termination and adoption may be brought in the court of the county:
>
> (1)  Where the parent or parents or the adoptee or the person or persons who have filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt) reside.
>
> (2)  In which is located an office of an agency having custody of the adoptee or in the county where the agency having placed the adoptee is located.
>
> (3)  With leave of court, in which the adoptee formerly resided.

23 Pa.C.S. § 2302.

This Court recently addressed venue with regard to a Petition for the Involuntary Termination of a biological father's rights filed in Centre County,

Pennsylvania, pursuant to an agreement between the biological mother (who voluntarily relinquished her parental rights) and the Ohio adoptive couple. *In re Adoption of G.K.T.*, 75 A.3d 521 (Pa. Super. 2013). None of the parties involved lived in Centre County and there was no agency involved in the proceeding. In response to the adoptive couple's claim that the Legislature's use of the permissive word "may" in Section 2302 allowed the child's biological mother and adoptive couple to agree to venue, we stated:

> If we were to agree with Adoptive Couple's position, [S]ection 2302 would lose its force. Venue would therefore be appropriate in **any** county in this Commonwealth if the petitioning party and consenting party agree to it. As a result, the contesting party would be without recourse to challenge venue under [S]ection 2302.
>
> It is true that nothing prevents Adoptive Couple and Mother from agreeing to venue in Centre County. However, Adoptive Couple and Mother cannot by agreement require Father to accept venue in Centre County where, as noted above, all parties agree that Centre County has no connection to the case or to the parties in it.

*G.K.T.*, 75 A.3d at 527-28.

Father argues that the above reasoning in *G.K.T.* "directly applies to the present case." Father's Brief at unnumbered 25. We disagree.

The Orphans' Court offered the following explanation for why it granted Mother's motion for leave to litigate the termination petition in Adams County:

> Under 23 Pa.C.S.A. §2302, venue can lie in a county where the child formerly resided. The statute does not place a time limit upon how recently that former residence had to

occur in order for the former county to retain venue. Therefore, the [Orphans'] [C]ourt felt that the length of absence from Adams County was only one factor among other relevant information to consider when determining whether venue should be retained in Adams County. Here [Child] resided in York County since January 2013, after moving from Adams County. [Mother] argued that venue was appropriate in Adams County because of the former residence, [Child] was attending school in Adams County, there is a custody action in Adams County, there is extended family in Adams County, and 8 of 14 potential witnesses, including a psychologist, reside or have an office in Adams County. [Father] had no ties to either Adams or York County except for the aforesaid custody action. Based upon these factors, venue was retained in Adams County. As it turned out, at trial, [Mother] did not call all of the potential witnesses; however [the Orphans' Court] assume[s] that decision was based upon trial strategy at the time.

Orphans' Court's Opinion, 10/20/15, at 2.

Thus, unlike in *G.K.T.*, Child and Mother have significant contacts in Adams County. Adams County was their prior residence, Child still goes to school there, and it was where the parties' custody case had been proceeding. We agree with the Orphans' Court's that it was appropriate to proceed on Mother's TPR petition in Adams County.

**Termination of Father's Parental Rights**

In his second claim, Father argues that the Orphans' Court erred in concluding that he failed to perform his parental duties, and avers that Mother presented insufficient evidence to support the involuntarily termination of his parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b).

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

In the instant case, the Orphans' Court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), which provide:

**§ 2511. Grounds for involuntary termination**

**(a)**   **General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

***

(b)   **Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.   The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.   With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(1) and (b).

**<u>Termination of Father's Parental Rights for Failure to Perform Parental Duties</u>**

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

- 10 -

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition, Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life. Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must

- 11 -

> utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. **Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs.**

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted) (emphasis added).

In the instant case, in determining that Mother had met her statutory burden to terminate Father's parental rights pursuant to Section 2511(a), the Orphans' Court concluded:

> [V]iewing this matter objectively, it was clear that for a period of nearly six years from the time [Child] was 14 months old until the instant petition was filed when she was 7 years old, the only things [Father] did to fulfill his parental duty was to 1) visit [Child] for several hours in the Spring of 2011 and in February of 2012[;] 2) initiate a custody action in April of 2012 in South Caroline[;] 3) visit [Child] for 12 hours in March [2013;] 4) make weekly 5-minute telephone calls to [Child] after March 25, 22013[;] 5) visit with [Child] for 16 hours [in April 2013]; and 6) visit with [Child] for 26.5 hours [in July 2013]. [Father has not seen [Child] since July 7, 2013. He has not supported [Child] (except for medical coverage at some unknown cost); been involved in [Child's] education , health care, parent[sic] or activities; [and] has not … requested further custody court intervention for the last two years.

Trial Court's Opinion, dated 10/20/15, at 3-4.

As the Orphans' Court properly noted, Father's diligence in maintaining brief contact hardly qualifies as exercising his parental duties, "especially when the pathway to meaningful and regular physical meaningful involvement was being paved" in the custody proceeding. Trial Court Order,

- 12 -

dated 9/11/15, at 13-14. Our review of the record supports the Orphans' Court's determination. Accordingly, the trial court did not abuse its discretion in terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1).

## 23 Pa.C.S. § 2511(b) – Child's Best Interests

Father also challenges the Orphans' Court termination of his parental rights pursuant to 23 Pa.C.S. § 2511(b). While Father admits that "there is no question that at this time [Child] has a very limited relationship with [him], he nonetheless asserts that "[t]his is not his fault[,]" because he "has done everything he is permitted to do and in fact he was exercising the only custody rights he could under the Custody Order." Father's Brief at unnumbered 38.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the child's best interests with respect to the child's bond with his or her parent. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of

the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In the instant case, the Orphans' Court determined that there was no discernable bond between Child and Father such that termination of Father's parental rights would negatively affect Child. The court concluded:

> There is no evidence of a beneficial bond that exists between Father and [Child], nor is there any evidence that Father is aware of [Child's] individual needs, her personality, her idiosyncrasies, her medical or her educational circumstances. [Child] has lived with Mother her entire life and with [M.D] since October 2009, when she was 18 months old. [Child] views [M.D.] as her father, she calls him "daddy" and he attends to her every need. [M.D.] is willing to adopt [Child]. Accordingly, the Court concludes that it is in [Child's] best interest to grant the Petition.

Order of Court, 9/11/15, at 14-15 (footnote omitted).

Our review of the record supports the Orphans' Court's conclusion regarding the absence of any true parent/child bond between Father and Child.

## CONCLUSION

In sum, our review of the record supports the Orphans' Court's determination that Mother has met her statutory burden of proving by clear and convincing evidence that Father's parental rights should be terminated

pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and 2511(b). Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2016