J-A02024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: O.P.B.U., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.S. AND T.B. | : : : : : : : : | |
| | : | No. 1177 WDA 2024 |

Appeal from the Order Entered August 26, 2024
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2024-00014

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: January 31, 2025**

B.S. and T.B. (Foster Parents) appeal from the order which 1) dismissed their petition for involuntary termination of S.C.B.'s (Mother) and E.L.U.'s (Father's) parental rights to O.P.B.U. (born in July 2018) (Child); 2) sustained the preliminary objections to the termination petition filed by Blair County Children, Youth, and Families (CYF); and 3) denied Foster Parents' motion for transcripts.  As we conclude Foster Parents lacked standing to file the termination petition, we affirm.

On April 1, 2024, CYF filed a petition for involuntary termination of the parental rights of Mother and Father as to Child.  In the petition, CYF explained the underlying dependency action involved Child and his siblings, Ph.U. and Pa.U.  ITPR Petition, 4/1/24, ¶ 6(a).  CYF alleged it became involved with the

family in 2021, after receiving a report concerning Mother's substance abuse and inadequate housing. *Id.*, ¶ 6(b).

CYF obtained emergency custody of Child in September 2021. Child was placed in Foster Parents' home on September 24, 2021. The orphans' court adjudicated Child dependent on October 11, 2021. Child remained in Foster Parents' care until October 2024.[1]

On July 12, 2024, Foster Parents filed a petition for involuntary termination of Mother's and Father's parental rights to Child. Foster Parents alleged:

> [Child] was placed in [Foster Parents'] care and custody via [CYF]. For years, CYF has promised [Foster Parents] that it was [CYF's] intention to terminate the biological parents' parental rights [to Child] and move towards adoption with [Foster Parents]. To date, none of what was promised to [Foster Parents] has been accomplished. [Mother and Father] have displayed egregious conduct, yet CYF, in contradiction to [Child's] best interests, increased [] Father's visitation time with [Child]. [] Mother and Father have a lengthy history of drug abuse, which has been an ongoing issue since [Child] entered [Foster Parents'] care. Even more concerning, [] Mother recently overdosed during a court proceeding. Despite all of this concerning information, CYF has done nothing to ensure the safety of [Child]. Continued contact between [Child] and biological parents is not in [Child's] best interests. As such, with CYF's lack of support and recent loss of

_____

[1] In his appellate brief, Father states he regained physical and legal custody of Child on October 15, 2024. Father's Brief at 3-4. Because the dependency proceedings are distinct from the instant action, we are unable to confirm this fact from the record before us.

licensure,[2 Foster Parents] are prepared to act in [Child's] best interest in the filing of the instant Petition.

Foster Parents' Termination Petition, 7/12/24, ¶ 6 (footnote added). Additionally, Foster Parents claimed they had standing to file the petition by virtue of having custody of Child, or by standing *in loco parentis*. At the same time, Foster Parents filed a report of their intention to adopt Child.

The orphans' court scheduled a hearing on Foster Parents' petition for September 1, 2024. The court also appointed counsel to represent Child.

On August 2, 2024, CYF filed preliminary objections to Foster Parents' termination petition, arguing Foster Parents lacked standing to petition for involuntary termination of Mother's and Father's parental rights. Father, *pro se*, also filed an objection to Foster Parents' termination petition.

Subsequently, Foster Parents filed a motion to request transcripts of the April 11, 2024, permanency review hearing conducted on the underlying dependency docket.

According to the orphans' court, it ordered 1) Foster Parents to file a response to CYF's preliminary objections, and 2) CYF to file a response to

---

2 In May 2024, Pennsylvania's Department of Human Services revoked CYF's operating license. **See** *State revokes Blair CYF's license*, ALTOONA MIRROR, https://www.altoonamirror.com/news/local-news/2024/05/state-revokes-blair-cyfs-license/ (last visited Dec. 12, 2024). CYF obtained a regular license by the end of that same month. **See** *Blair County CYF regains license after it was revoked, must determine structural improvements*, WVIA, https://www.wvia.org/news/pennsylvania-news/2024-05-31/blair-county-cyf-regains-license-after-it-was-revoked-must-determine-structural-improvements (last visited Dec. 12, 2024).

Foster Parents' motion for transcripts. Opinion and Order, 8/26/24, at 2. The referenced order is not contained in the certified record.

On August 26, 2024, the orphans' court entered an opinion and order denying Foster Parents' motion for transcripts, sustaining CYF's preliminary objections, and dismissing Foster Parents' termination petition. The court also cancelled the previously scheduled hearing.

On September 23, 2024, Foster Parents filed a response to CYF's preliminary objections. Foster Parents maintained they had standing to pursue termination of Mother's and Father's parental rights. Foster Parents reiterated that Child was in their care for over three years. They also argued that Mother and Father "displayed conduct indicative of relinquishing their care of" Child. Response, 9/23/24, ¶ 17.

Foster Parents timely filed a notice of appeal on September 25, 2024, and an accompanying Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal.[3, 4]

Foster Parents raise the following issues for review:

_____

[3] In its Pa.R.A.P. 1925(a) statement, the orphans' court relied on its reasoning as set forth in its August 26, 2024, opinion and order.

[4] On November 1, 2024, this Court issued an order directing Foster Parents to show cause as to their standing to appeal. In response, Foster Parents argued they would have standing, as prospective adoptive parents, to file a petition to intervene in Child's dependency proceedings, and thus, they should also have standing to file a termination petition in this matter. This Court subsequently discharged the show-cause order and referred the issue to the merits panel.

I. Did the [orphans'] court err in dismissing [Foster Parents'] petition for involuntary termination of parental rights[,] as they do have custody and *in loco parentis* standing?

II. Did the trial court err in determining that [Foster Parents] did not have standing to pursue termination as prospective adoptive foster parents?

III. Did the trial court abuse its discretion when it failed to consider that the dependency matter had a concurrent goal of adoption in dismissing the petition for termination of parental rights?

Foster Parents' Brief at 4 (some capitalization modified).

Foster Parents' first two claims relate to the threshold issue of standing. *See Interest of K.N.L.*, 284 A.3d 121, 137 (Pa. 2022) ("Standing is a threshold issue and must be resolved before proceeding to the merits of the underlying action."). First, Foster Parents argue they have standing to intervene in the dependency proceedings. Foster Parents' Brief at 13. Foster Parents claim they should be considered prospective adoptive parents, because CYF repeatedly informed Foster Parents that Child's permanency goal was adoption. *Id.* at 15. Additionally, Foster Parents point to their strong bond with Child. *Id.* at 16. "Foster Parents believe that the [] case law establishes their right to intervene in the proceedings, thus also establishing their standing to file other petitions in relation to the instant case." *Id.* at 17;

*see also id.* at 18-21 (Foster Parents reviewing the statutory requirements for standing in a custody action and asserting their *in loco parentis* status).[5]

In their second issue, Foster Parents assert they have standing to seek termination of Mother's and Father's parental rights under 23 Pa.C.S.A. § 2512(a)(3). Foster Parents' Brief at 26-27. Foster Parents claim they stand *in loco parentis* because Child had been in their care for more than three years. *Id.* at 27.

CYF counters that Foster Parents cannot establish standing under any subsection of 23 Pa.C.S.A. § 2512(a)(3). CYF's Brief at 8-9. CYF emphasizes that Foster Parents do not have physical or legal custody of Child. *Id.* at 9. CYF also contends Foster Parents cannot stand *in loco parentis* because Mother and Father have not agreed to Child's permanent placement. *Id.* at 10.[6]

---

[5] Throughout their argument, Foster Parents frequently refer to their standing to intervene in the *dependency* proceedings. However, any petition to intervene at the dependency docket is not at issue in the instant appeal.

Similarly, Foster Parents rely on **Interest of S.W.**, 312 A.3d 345 (Pa. Super. 2024), in support of their claim that they should be considered "prospective adoptive parents." Foster Parents' reliance on **Interest of S.W.** is unavailing. This Court in **S.W.** was tasked with determining whether the foster parents were considered "prospective adoptive parents" for purposes of intervening in dependency proceedings to challenge the child's removal from their home. **See id.** at 350-59. The question of Foster Parents' right to intervene in Child's dependency proceedings is not properly before us in the instant appeal.

[6] Father filed a separate appellate brief, in which he claimed Foster Parents failed to file a petition to intervene in the dependency proceedings prior to filing a private petition for involuntary termination. Father's Brief at 7; **see**
*(Footnote Continued Next Page)*

"Standing relates to the capacity of an individual to pursue a particular legal action, and requires the petitioning litigant to be adversely affected, or aggrieved, in some way." ***Interest of K.N.L.***, 284 A.3d at 136. The threshold issue of standing is a question of law. ***See M.S. v. J.D.***, 215 A.3d 595, 598 (Pa. Super. 2019). Hence, "our standard of review is *de novo* and our scope of review is plenary." ***Id.***

The Adoption Act establishes a cause of action to involuntarily terminate parental rights. ***See*** 23 Pa.C.S.A. § 2511. Section 2512(a) clarifies who may file a petition for involuntary termination:

**§ 2512. Petition for involuntary termination**

**(a) Who may file.--**A petition to terminate parental rights with respect to a child under the age of 18 may be filed by any of the following:

(1) Either parent when termination is sought with respect to the other parent.

(2) An agency.

(3) The individual having custody or standing *in loco parentis* to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

---

***also id.*** at 7-8 (indicating Foster Parents filed a motion to intervene *after* they filed the instant termination petition). Father maintains that Foster Parents lacked standing to litigate a termination petition. ***See id.*** at 10-15.

Additionally, Child's guardian *ad litem* joined the briefs filed by CYF and Father.

(4) An attorney representing a child or a guardian *ad litem* representing a child who has been adjudicated dependent under 42 Pa.C.S. § 6341(c) (relating to adjudication).

23 Pa.C.S.A. § 2512(a).

Foster Parents argue they stand *in loco parentis* to Child and therefore have standing to file a termination petition under section 2512(a)(3). "Case law has defined custody in this context as legal custody rather than physical custody." ***In re Adoption of B.R.S.***, 11 A.3d 541, 545 (Pa. Super. 2011). This Court has explained the requirements of establishing *in loco parentis* status:

> [T]he legal status of *in loco parentis* refers to a person who puts himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. There are two aspects to the concept of *in loco parentis*: assumption of parental status and discharge of parental duties. In order for assumption of parental duties to be legitimate, it must have been accomplished through some legally cognizable means. Furthermore, **the assumption of parental status must be predicated on the natural parent's agreement to a permanent placement of the child.** The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.

***In re B.L.J., Jr.***, 938 A.2d 1068, 1073 (Pa. Super. 2007) (citations, quotation marks, and paragraph breaks omitted; emphasis added).

Instantly, the orphans' court concluded Foster Parents lacked standing to seek termination of Mother's and Father's parental rights. ***See*** Opinion and Order, 8/26/24, at 3-4. The orphans' court explained:

> It is clear that [] Father and Mother [] have not agreed to [Child's] permanent placement with either [CYF] or [Foster Parents].

Indeed, the goal remains to return [] Child to the parents. With that unassailable fact established, the outcome of this case is clear since legal custody remains with [CYF,] and [Foster Parents] do not have *in loco parentis* standing.

***Id.*** at 4. We agree.

While Foster Parents cared for Child for more than three years, Foster Parents were never granted legal custody of Child. ***See In re Adoption of B.R.S.***, 11 A.3d at 545. The record likewise confirms that Mother and Father[7] never agreed to the permanent placement of Child with Foster Parents. This fact alone defeats Foster Parents' assertion of *in loco parentis* standing. ***See In re B.L.J., Jr.***, 938 A.2d at 1073; ***see also In re Adoption of B.R.S.***, 11 A.3d at 547 (concluding foster parents did not have standing to file a termination petition; foster parents could not establish *in loco parentis* status, where the child's biological father did not agree to the child's permanent placement with foster parents or the agency). "Furthermore, the fact that Foster Parents subjectively intended to adopt [Child] when they first assumed their parental roles has no legal significance." ***In re Adoption of B.R.S.***, 11 A.3d at 547. Accordingly, Foster Parents lacked standing to file a termination petition under 23 Pa.C.S.A. § 2512(a)(3).[8]

_____

[7] We note that Mother's position on Foster Parents' termination petition is not clear from the present record, and only Father has filed a brief in this matter. Nonetheless, we defer to the orphans' court's finding that neither parent consented to Child's permanent placement with Foster Parents.

[8] Based on our conclusion that Foster Parents lacked standing to file the termination petition, we need not address their final claim.

We therefore conclude the orphans' court properly sustained CYF's preliminary objections on the basis of standing; dismissed Foster Parents' termination petition; and denied Foster Parents' petition for transcripts.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/31/2025